ARTHUR P. FORCUM, Plaintiff in Error, *vs.* ELWOOD
BROWN *et al.* Defendants in Error.

*Opinion filed October 25, 1911.*

1. DEEDS—*a deed. fraudulently procured and delivered does not
convey title.* Fraud by real estate agents in procuring a deed and
delivering the same to a person other than the one to whom the
grantor intended to convey the land renders the deed inoperative
and void to the same extent as though it had been forged, and an
innocent purchaser from the person to whom the deed was fraudu-
lently delivered acquires no title as against the grantor, who was
without negligence in the matter.

2. APPEALS AND ERRORS—*alleged errors complained of by appel-
lee are not considered unless cross-errors are assigned.* Alleged
erroneous rulings of the court in admitting evidence, which are
complained of in the brief of the appellee or defendant in error,
cannot be considered where no cross-errors are assigned.

WRIT OF ERROR to the Circuit Court of Hamilton
county; the Hon. J. R. CREIGHTON, Judge, presiding.

This was a bill in equity filed by Arthur P. Forcum,
plaintiff in error, in the circuit court of Hamilton county,
at the February term, 1910, to cancel and set aside certain
deeds purporting to convey 140 acres of land situated in
said Hamilton county, Illinois, of which the complainant
claimed to be the owner.

The substance of the charges' in the bill is, that the com-
plainant owned the 140 acres of land in Hamilton county,
and in February, 1909, Chase Schaff and Edward Rimmer-
man, real estate agents in the city of Tulsa, Oklahoma,
under the firm name of Schaff & Rimmerman, proposed to
trade complainant 200 acres of land in Hughes county,
Oklahoma, for his land in Illinois, subject to a mortgage of
$1500 which was then a lien on complainant's land; that
Schaff & Rimmerman represented to the complainant that
160 acres of the Oklahoma land they proposed to trade him
belonged to Elwood Brown and that they were the agents.

of said Brown for the sale or exchange of the land; that the other 40 of the 200 acres belonged to another party, but that Brown had control of it and could place it with his 160 acres in the deal; that by the terms of the written agreement for the exchange of the land, which agreement was signed by Schaff & Rimmerman for Brown, complainant was to reserve the coal under the Illinois land; that on the 27th day of March, 1909, complainant executed a deed for the Illinois land to Brown and delivered the same to Rimmerman for the grantee; that at the same time Rimmerman delivered to complainant a deed purporting to be executed by Brown, conveying to complainant the 160 acres in Hughes county, Oklahoma, and also a deed purporting to be signed by E. H. Martin, who claimed to be the owner of the other forty; that at the time complainant made his deed to Brown, Rimmerman requested him to make no reservation of the coal, as Brown would have to borrow the money on the Illinois land to pay off the mortgage, and that after doing so he would make a conveyance of the coal back to complainant; that no reservation, therefore, was made in the deed by complainant to Brown. The bill charges that the deed delivered to complainant was never signed by Brown and that his name was forged to said deed; that Brown, who is the owner and in possession of the land, is a negro boy fourteen years old, and had no knowledge whatever of the proposed exchange of the land to complainant; that Brown's name was also forged to a deed dated April 8, 1909, purporting to convey complainant's land to one William Langston, which deed was duly recorded in the recorder's office of Hamilton county, Illinois; that on June 5, 1909, a deed purporting to be signed by William Langston and wife, conveying the Hamilton county land to J. E. Robinson, was filed with the recorder of Hamilton county, Illinois; that on June 9, 1909, a quitclaim deed, to which Brown's name was forged, was executed and filed for record in Hamilton county, Illinois,

purporting to convey the land in Hamilton county to J. E. Robinson; that some time after complainant had made his deed to Brown and received the deed purporting to be executed by Brown to him, he received from Rimmerman a deed purporting to be executed by Brown, conveying to complainant the coal under the Illinois land; that complainant, who lived in Charleston, Illinois, sent the deed to the recorder of Hamilton county with the request that it be recorded; that the deed was returned to complainant by the recorder with the statement that the land had been conveyed by Brown to Langston and by Langston to Robinson and the deed for the coal was of no value; that thereafter complainant received information from the tax collector of Hughes county, Oklahoma, that Brown was a part Creek Indian boy fourteen years old, and that the land had been allotted to Brown by the government; that the complainant thereupon went to Oklahoma and visited Brown, and found him to be a fourteen-year-old boy, living with his parents; that he thereupon brought this suit to set aside and cancel the deed from himself to Brown, from Brown to Langston and from Langston to Robinson. The bill alleges that the forty acres conveyed to complainant by Martin were and are subject to a mortgage of $250, and that an agent of Schaff & Rimmerman paid to complainant the amount of said mortgage at the time the exchange was made; that the complainant spent this money before he learned of the fraud practiced upon him, and he offers to re-convey said forty acres to the party or parties to whom the court may find they should be conveyed, and to conform to any decree that may be entered with reference to a return of the $250 received by complainant. Brown was made a party defendant to the bill and answered the same by guardian *ad litem*. Robinson answered, denying the deed from Brown to complainant was a forgery, or that the Elwood Brown who executed the deed was a minor under fourteen years of age and in possession of the Oklahoma land; denied the

deed from Brown to Langston was a forgery, and denied
the land in Oklahoma was allotted to Brown as a Creek
freedman. The answer avers that all the deeds were true
and genuine, and denies any knowledge on the part of Rob-
inson of any fraud or wrongdoing in the transaction. All
other defendants were defaulted. Upon a hearing before
the court the bill was dismissed for want of equity, and
complainant has brought the record to this court for re-
view by writ of error.

ALBERT C. ANDERSON, and JOHN H. MARSHALL, for
plaintiff in error.

ISAAC H. WEBB, and HARRY ANDERSON, for defendants
in error.

CHARLES C. LEE, guardian *ad litem.*

Mr. JUSTICE FARMER delivered the opinion of the court:

The evidence shows that the 160 acres of land in Hughes
county was allotted to Elwood Brown, a one-eighth Creek
Indian boy still lacking several years of his majority, by
the Dawes Commission, and that he has never attempted to
convey it and had no knowledge of the purported Elwood
Brown who conveyed to plaintiff in error, or the convey-
ance made by him, until after it was made, and he then
filed a bill, by his father as next friend, to set aside the
conveyance.

Plaintiff in error contends that the proof shows there
was no such person as the Elwood Brown who made the
deed that was delivered to him, but that the name "Elwood
Brown," borne by the person in whom the title was, and
who was not known to plaintiff in error to be a minor,
was forged to the deed; that the certificate of acknowl-
edgment was false and known to be so by the man who
made it, and that the name "Elwood Brown" was forged

to the deed conveying the land to Langston; also, that the deed from the plaintiff in error was never delivered to the grantee to whom it was made, but was fraudulently delivered by Schaff & Rimmerman, to whom its delivery to the grantee was entrusted by the grantor, to another and different person and one never intended by the grantor, and that no title passed thereby.

Defendant in error Robinson claims a negro appeared in Tulsa the latter part of the year 1908 calling himself Elwood Brown and claiming to own the 160 acres in Hughes county; that he remained in Tulsa until August, 1909, and Schaff & Rimmerman, believing him to be the Elwood Brown who owned the land, negotiated the exchange of it with plaintiff in error, and that this man signed and acknowledged the deed to plaintiff in error, received the deed from plaintiff in error for the Illinois land and made the conveyance of it to Langston, who conveyed to Robinson. Under these circumstances it is claimed that Robinson will be protected as an innocent purchaser; that as plaintiff in error by his conduct put it in the power of a third party to perpetrate the fraud, the loss must therefore fall on him.

A brief synopsis of the testimony is as follows: Plaintiff in error testified that Schaff & Rimmerman, in February, 1909, went with him and showed him the 160 acres in Hughes county, near Holdenville, and told him it was owned by Elwood Brown, who was a one-eighth Creek Indian and lived with his father, Jeff Brown, about a mile from the land. Schaff said he himself had been a cattle man and lived in that neighborhood sixteen years and was well acquainted with the land. Plaintiff in error never saw Elwood Brown. He returned home after signing a contract to trade his land for the 200 acres in Oklahoma, and next saw Rimmerman in Charleston, Illinois, in March following, when he came there with the deed purporting to have been executed by Elwood Brown. Plaintiff in error then executed a deed for the Illinois land to Elwood Brown,

2 5 1 — 2 0

delivered it to Rimmerman and received from him the deed for the Oklahoma land purporting to have been executed by Elwood Brown. By the terms of the written agreement for the exchange of lands plaintiff in error was to reserve the coal rights in his Illinois land, but he testified that Rimmerman asked him not to do so in the deed to Brown, as Brown had to borrow the money on the land to pay the $1500 mortgage on it, and Rimmerman agreed if plaintiff in error would make a deed without reserving the coal, Brown would deed him the coal as soon as he secured his loan. Plaintiff in error, relying on the promises of Rimmerman, did not reserve the coal. A deed purporting to be made by Elwood Brown conveying to plaintiff in error the coal was executed April 15, 1909, and sent to plaintiff in error by Rimmerman. It was accompanied by a letter from Rimmerman requesting plaintiff in error not to file it for record for a while, as he had not been able to secure the loan for Brown and wanted more time. Plaintiff in error delayed filing his deed for some time in order to give Rimmerman time to get the loan through, and when he sent it to the recorder it was returned not recorded, with the information that there had been recorded a deed dated April 8, 1909, executed by Elwood Brown, conveying the land to William Langston, and a deed dated June 6, 1909, executed by William Langston, conveying the land to the defendant in error J. E. Robinson. A significant circumstance illustrative of the unreliability of Rimmerman is, that the deed purporting to convey the Illinois land to Langston was made seven days before Rimmerman wrote plaintiff in error to give Brown further time to procure the $1500 before recording the deed for the coal. Afterwards plaintiff in error attempted to pay the taxes on the Oklahoma land, and was informed by the collector that Elwood Brown, a minor, claimed to own the land. Upon investigation plaintiff in error found the 160 acres were owned by Elwood Brown, a boy fourteen years old, living with his

father, Jeff Brown; that the boy was a one-eighth Creek
Indian; that his land had been allotted to him by the
Dawes Commission and he had no knowledge of the pur-
ported deed to plaintiff in error. Plaintiff in error called
on and informed Schaff & Rimmerman of the situation.
He testified they first said they did not know either Elwood
Brown or William Langston; that they had so many cus-
tomers' names on their books that they could not remember
all of them, but later they said Brown was of age, but the
best way out of the difficulty was for plaintiff in error to
make a quit-claim deed to some irresponsible party who
would make a warranty deed and they could sell the land
for something. This proposition plaintiff in error declined.

T. N. Cofer, of Charleston, Illinois, county judge of
Coles county, and W. O. Glassco, deputy sheriff of Coles
county, went with plaintiff in error to Oklahoma in March,
1910, which was after this suit was begun, to investigate
the situation and ascertain who signed the deed bearing the
name Elwood Brown. It was understood if there was any-
one by that name other than the fourteen-year-old boy, he
was a negro. The three parties above named went to Tulsa
and inquired of many persons living in and doing business
there, and also of the sheriff and his deputies, persons em-
ployed in the post-office, hotel porters, city detective and a
colored policeman named Cleaver, who went with him and
helped them in their search for Elwood Brown. They also
inquired of fifty or more colored men, and say none of
them had ever seen or heard of Elwood Brown. His name
was not in the city directory for 1909. They found Lang-
ston, who was a negro, and interviewed him. Plaintiff in
error, Judge Cofer and Glassco testified that they had two
talks with Langston,—one about noon and the other about
eight o'clock in the evening of the same day; that at their
first interview with Langston he said he traded with a col-
ored man named Elwood Brown for 160 acres of land near
Holdenville; that he did not know how far it was from

Holdenville; that he never saw it but once, and that it had an old house on it; that he traded the land for some kind of a stock of goods but did not know what, and received $1500 or $1600 for the land; that Rimmerman made the trade. The same three witnesses testified that at the second interview Langston said he met Elwood Brown on the streets of Tulsa three or four days before the trade was made; that he gave Brown a horse and $250 for 160 acres of land near Holdenville; that he went to Holdenville on a train and drove out to the land; that a man he met three or four miles out of town told him where the land was; that he did not go on the land and did not know whether it had a house on it or not; that it was two, four, six, or maybe ten, miles south-east from Holdenville. Langston said he received $500 or $600 and an old merry-go-round for the stock of goods he traded the land for. Rimmerman made the trade for a commission but Langston did not know what he was paid.

The depositions of Rimmerman, Schaff, Langston and others in Tulsa were taken on behalf of defendants in error. Rimmerman testified Elwood Brown came to his office in January, 1909, and said he owned 160 acres of land in Hughes county he wanted to sell, and that he could control the sale of some other land there also. In February plaintiff in error came to Tulsa and was taken by Schaff & Rimmerman to look at the land. After looking at it the contract for exchange was drawn up and signed, Schaff & Rimmerman signing it for Elwood Brown, who was not present. Abstracts were made showing title to the 160 acres in Elwood Brown, and Brown executed a deed for the 160 acres to plaintiff in error and E. H. Martin executed a deed for the 40 acres, subject to a mortgage for $250 which was not due, and plaintiff in error was paid $215.50 cash on that account. An allotment map in the office of Schaff & Rimmerman showed Elwood Brown to be the owner of the 160 acres. Schaff & Rimmerman rep-

resented Langston in the sale to Robinson of the Illinois
land, which was subject to a mortgage of $1500 made be-
fore plaintiff in error conveyed to Elwood Brown. The
Illinois land was traded, subject to the mortgage, to Rob-
inson for a stock of goods. Rimmerman testified he took
charge of the stock of goods for about ten days but was
unable to sell enough to pay expenses and sold the stock
for $800 and a steam swing or merry-go-round. The wit-
ness denied saying they had so many customers they could
not remember them, and denied proposing to plaintiff in
error that he make a quit-claim deed for the Oklahoma
land to some irresponsible party who would make a war-
ranty deed for it and Schaff & Rimmerman would sell it for
him. He testified he had nothing to do with the sale from
Elwood Brown to Langston; that he knew Brown from
January, 1909, to August, 1909; that while the trade was
pending Brown was in witness' office frequently, and that
he had not, until this controversy arose, heard of Elwood
Brown of Hughes county. He said Elwood Brown was a
negro twenty-four or twenty-five years old. He testified, on
cross-examination, that he kept no books in connection with
his business. When asked how much he gave Langston out
of the $800 received for the stock of goods he said he
thought $400. He was then asked if he paid it in checks
and said he did not know, and, immediately after swearing
he did not know how he paid Langston, he was asked how
he paid him, and answered he paid him in currency, at the
office of Schaff & Rimmerman.

Schaff testified to having seen Elwood Brown in Tulsa
frequently from December, 1908, to the latter part of the
summer of 1909, and that he claimed to own the 160 acres
by allotment by the Dawes Commission. He denied pro-
posing to plaintiff in error that he deed the land to some
irresponsible person who would make a warranty deed and
witness and Rimmerman would then sell it for him. He
also denied that he told plaintiff in error when they went

to look at the land, before the trade was made, that El-wood Brown lived with his father, Jeff Brown, about a mile from the land. He testified he thought Rimmerman gave Langston $400 of the proceeds of the sale of the stock of goods the Illinois land was traded for. He further testified that he and Rimmerman were to have a commission of $300 or $350 from Brown for making the trade with plaintiff in error, and that when Rimmerman received the $800 for the stock of goods he told Langston he was going to keep $350 or $400 in payment of the commission Brown owed them.

William Langston testified he first met Elwood Brown in the spring or summer of 1909 and saw him around Tulsa eight or nine months, but had not seen him for seven or eight months before his deposition was taken. He said he gave Brown $500 cash and a note for $1000 for the Illinois land. The note was due one year from date but had never been paid. He said Rimmerman traded the Illinois land for him and received a swing and $800 in money. The witness did not remember making the statements plaintiff in error, Judge Cofer and Glassco testified he made in the two interviews they had with him. He said he could not tell what he did say on those occasions. He testified he received the swing and about $400 from Rimmerman for the Illinois land; that he did not receive a check but received the money by mail. On re-direct examination he said he received the money in Rimmerman's office; that he never saw the Illinois land.

Barney Cleaver was a colored policeman in Tulsa, and plaintiff in error, Judge Cofer and Glassco testified they applied to him for information of Elwood Brown. Cleaver stated to them he did not know him, had never heard of him, and accompanied the three witnesses in search of someone who might know Brown, and himself inquired of a number of people if they knew anything about such a man. In his deposition, taken by defendants in error to

be used on the trial of this case, Cleaver testified he knew a man in Tulsa who went by the name of Elwood Brown; that he was a "rounder;" that he went around with a man who was selling land; that he was twenty-two or twenty-three years of age, and that witness took him to be a thief; that the man he associated with got into a great deal of trouble and had to leave, but witness could not remember his name.

The deeds purporting to have been executed by Elwood Brown, and the deed from Langston to Robinson, were acknowledged before M. L. Lynch, a colored notary public. Lynch, on behalf of defendants in error, testified Elwood Brown appeared before him in person and acknowledged said deeds, and that Langston acknowledged before him the deed for the Illinois land to Robinson.

On behalf of defendants in error, J. B. Saunders testified he lived about twelve miles from Tulsa; that he had seen Elwood Brown in Tulsa; that he saw him first in February or March, 1909, in Schaff & Rimmerman's office, talking about some kind of a trade. Witness said he was in the habit of loafing in the office of Schaff & Rimmerman and saw Brown there several times. Brown was on a deal about 160 acres of land in Hughes county, Oklahoma.

Plaintiff in error introduced in evidence on the trial the record of an indictment, trial and conviction of Schaff and Rimmerman in the United States District Court at Muskogee, Oklahoma, for using the United States mails for fraudulent purposes. The indictment charged them and a party named Eubank with defrauding John R. King, of Bridgeport, Illinois, out of $12,000 worth of property by purporting to trade him 360 acres of land in Hughes county, Oklahoma, the scheme alleged in the indictment bearing a resemblance to the transaction here under consideration. Schaff and Rimmerman were each sentenced to imprisonment in the United States penitentiary at Leavenworth, Kansas, for a term of one year. They appealed from the

judgment to the United States Circuit Court of Appeals, and their appeal was pending when their depositions were taken in this case. Schaff and Rimmerman were shown to have a most unenviable record in connection with their real estate transactions.

Plaintiff in error, Judge Cofer and Glassco testified that during their investigation in Tulsa they became acquainted with the general reputation there of Schaff, Rimmerman, Langston, and Lynch, the notary, for truth and veracity and that the reputation of each was bad; that the general reputation of Schaff and Rimmerman for truth and veracity at Holdenville, Hughes county, was bad. The witnesses testified they talked with a large number of business men, with officials and others, and from these, without any exception, they learned the reputation for truth and veracity of the parties mentioned was bad.

The deed purporting to be made by Elwood Brown to Langston for the Illinois land was on an Oklahoma form, and after Langston conveyed it to Robinson an Illinois form quit-claim deed purporting to have been executed by Elwood Brown to Robinson was filed for record by Robinson in Hamilton county, Illinois, and recorded. The original deed from Brown to plaintiff in error for the Oklahoma land and the deed for the coal under the Illinois land, also the original quit-claim deed from Brown to defendant in error Robinson, have been certified up for our inspection. From an inspection of the signatures it seems certain that the name Elwood Brown to the deed to plaintiff in error for the Oklahoma land was not written by the same person who signed the name Elwood Brown to the quit-claim deed to Robinson and the deed to plaintiff in error for the coal under the Illinois land.

A consideration of the testimony, an outline of which we have above set out, satisfies us that there was no such person as the man Schaff and Rimmerman claimed represented himself to be Elwood Brown. We cannot escape

the conviction that the testimony of Schaff, Rimmerman, Langston, Lynch, Cleaver and Saunders is unworthy of belief. Their testimony in many respects is unreasonable and in some important particulars inconsistent and contradictory. We can reach no other conclusion, from the evidence, than that Schaff and Rimmerman knew the boy Elwood Brown and that he owned the 160 acres of land. They conceived the scheme of pretending to trade this land to plaintiff in error, who did not know the owner. They could show by the abstract good title in Brown, and did so. To complete their fraudulent scheme they had some one sign the name Elwood Brown to the deed, and Langston and Lynch helped them to complete the fraud. It can only be conjectured why Cleaver and Saunders should perjure themselves, but one need only to read their testimony in connection with all the other evidence in the case to conclude that they were not truthful. It is impossible of belief that Schaff and Rimmerman were imposed upon and deceived, as they now claim, by a negro representing himself to be Elwood Brown, the owner of the 160 acres of land. Schaff had lived for many years near the land and his wife owned land in that vicinity. He, or both he and Rimmerman, when they went with plaintiff in error to look at the land, told him it belonged to Elwood Brown, who lived near the land with his father, Jeff Brown. It was true, the land was owned by Elwood Brown and that he lived near it with his father, Jeff Brown. The only thing concealed from plaintiff in error was the age of Brown. It was this Elwood Brown plaintiff in error agreed to accept a conveyance from and make a conveyance to, and it was this Elwood Brown for whom plaintiff in error delivered his deed to Rimmerman. So far as the rights of the parties to this suit are concerned, the fact that Brown was a minor was unimportant. If plaintiff in error had known he was a minor and had made the conveyance to him with that knowledge, it was as unlawful for Schaff & Rimmer-

man to deliver the deed to another as it would have been if Brown had been of age. Schaff & Rimmerman represented themselves as the agents of the Elwood Brown who owned the land and lived near it with his father, Jeff Brown. They agreed to deliver to plaintiff in error a deed for the 160 acres executed by him, and they had authority to deliver the deed executed by plaintiff in error to him and to no one else. They knew this, but fraudulently caused some other person to sign the name Elwood Brown to a deed to plaintiff in error and then pretended they delivered the deed from plaintiff in error to that person. The delivery of the deed from plaintiff in error under those circumstances was no more effective to divest him of title and vest it in the grantee than it would have been if the deed had been a forgery, and no authority need be cited to support the proposition that an innocent purchaser through the grantee of a forged deed gets no title. It has been uniformly held by all courts that where a deed has been left by the grantor with a depositary to be delivered to the person named therein as grantee upon his compliance with certain conditions or agreements, the unauthorized delivery by the depositary before performance of the conditions or agreements conveys no title, and an innocent purchaser through such grantee is no more entitled to protection than in case of forgery. *Dixon* v. *Bristol Savings Bank,* 102 Ga. 461; 66 Am. St. Rep. 193; *Stanley* v. *Valentine,* 79 Ill. 544; *Jackson* v. *Lynn,* 94 Iowa, 151; 58 Am. St. Rep. 386; *Everts* v. *Agnes,* 4 Wis. 343; 65 Am. Dec. 314.

In our opinion plaintiff in error was guilty of no negligent conduct that would require or justify a court to compel him to suffer the loss instead of Robinson. He was no more guilty of negligent conduct in the transaction than Robinson was. Much is sought to be made of the fact that the deed from plaintiff in error was to Elwood Brown "of Tulsa, Tulsa county, Oklahoma." Plaintiff in error testified that the deed executed by him was prepared at his

direction by C. C. Digby, a notary public, in Charleston, Illinois, and, so far as he knew, Rimmerman gave no directions as to its preparation. He further testified that he did nôt know the deed described the grantee as of Tulsa; that the only Elwood Brown he knew or had heard about was the one living in Hughes county, near the land, and it was to him he made the deed. It is clear to our minds from this record that plaintiff in error, when he made this deed, had never heard of any other Elwood Brown than the one residing in Hughes county; that the deed was made to him, and the insertion in the deed, after the name of the grantee, "of Tulsa, Tulsa county, Oklahoma," must have been done without the knowledge or direction of the plaintiff in error by the draughtsman, who doubtless knew Rimmerman was of Tulsa and assumed Elwood Brown was also of the same place.

Counsel for defendant in error Robinson in their brief argue that the court erred in the admission of certain testimony on behalf of the plaintiff in error and in admitting certain testimony developed by cross-examination of defendant in error's witnesses. As no cross-errors have been assigned the correctness of the court's rulings has not been preserved for review. *Stowell* v. *Spencer,* 190 Ill. 453; *Village of Shumway* v. *Leturno,* 225 id. 601; *Jones* v. *Abbott,* 235 id. 220.

In our opinion the chancellor erred in dismissing the bill. Complainant is entitled to have the deed from himself to Elwood Brown for the land in Hamilton county, Illinois, canceled and set aside, also the deed from Brown to Langston and from Langston to Robinson. Plaintiff in error would then, at the instance of the proper party, be required to reconvey the Martin forty acres in Oklahoma and return the money he received for accepting the conveyance subject to the mortgage on the land, but there is nothing in the issues made in this case or the evidence heard from which any directions can be given upon the subject.

Martin is not a defendant, and no one else claims any interest in the 40 acres of land or to in any way represent Martin or any one claiming through him. At all events, Robinson claims nothing on account of that tract of land and his rights will be unaffected by any decree settling the equities as to that tract. If Robinson has paid anything on the mortgage against the Illinois land or has paid taxes on the land he should be protected to that extent.

The decree of the circuit court will be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.        *Reversed and remanded.*