(No. 20420.—                )

JOHN C. JOHNSON *et al.* Appellants, *vs.* JOHN WALLDEN *et al.* Appellees.

*Opinion filed December 18, 1930.*

HALL & DUSHER, for appellants.

LARGE & RENO, and W. J. BERRY, for appellees.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Winnebago county dismissing for want of equity an amended bill in chancery filed by appellants, John C. Johnson and Eleanora Johnson, against John Wallden and Elizabeth Wallden, appellees, praying for the cancellation of a deed made by appellants to certain real estate and for an injunction to restrain appellees from the prosecution of

a forcible entry and detainer suit to secure the possession of the premises described in the deed sought to be canceled.

The original bill alleged that on October 20, 1929, appellants and appellees executed a contract in writing with reference to the exchange of the real estate in question for real estate of appellees, and that the contents of such contract were unknown to appellants for the reason that it had been delivered to an attorney who refused to allow appellants to see it; that appellants believed that a deed for their property was one of the papers which had been delivered to the attorney, but that they were uncertain of this because the attorney had refused to permit them to inspect the papers; that appellee John. Wallden had begun an action of forcible entry and detainer to get possession of the premises belonging to appellants; that the execution of the papers had been induced by the intentional concealment by appellees of a material fact which depreciated and depressed the value of appellees' property. Appellees answered admitting the signing of a contract for the exchange of properties described in the bill and alleged that the attorney held deeds signed by the respective parties conveying the property owned by them, respectively, and that the deeds were fully executed and delivered and held by the attorney as the agent of both parties.

The cause was heard in open court on bill, answer and replication. At the close of complainants' case they were granted leave to file, and did file, an amended bill for the purpose of making the bill correspond with the proofs. By the amendment it was alleged, among other things, that on October 20, 1929, they executed certain instruments in writing in the office of Swan Lindskold, an attorney at law; that said papers were left in the hands of Lindskold; that before the filing of the original bill they requested him to be permitted to see the papers, but he refused to allow them, or anyone for them, to see them; that they requested him to make a copy thereof and offered to pay him there-

for, but he refused to do so; that because of such facts they were unable to produce copies of any of the instruments and did not know at the time of filing the original bill what papers they had signed, but they now represent that they executed a warranty deed for their premises, in which John Wallden and Elizabeth Wallden were named as grantees, and that Wallden and wife executed a deed for their property in which complainants were named as grantees; that the deeds were duly acknowledged; that there was on the property of defendants a mortgage to secure $3500, and that Wallden and wife executed a note for $3500, payable to complainants, and executed a mortgage on the property of complainants to secure the note, in which complainants were named as grantors; that the mortgage was not acknowledged and bears no certificate of acknowledgment; that the papers were all of the instruments which were then and there executed; that the instruments were left with Lindskold upon the express understanding that they should not be delivered until both parties agreed thereto and not until both parties instructed Lindskold to deliver the same to each other, and that they were left with him upon no other consideration or understanding; that the papers were not delivered and were not placed where they could be delivered without the consent of the complainants; that about October 30, 1929, complainants requested Lindskold to deliver back to them the deed which they had executed and directed him not to deliver the deed to anyone else; that the reason for the direction was that there were a number of things which defendants agreed to do which they had not done, and the fact that the complainants learned that the next door neighbors were, in fact, colored people or people of negro blood, and because the premises of the defendants were by that fact depreciated at least fifty per cent in value and salability. The prayer of the bill was also amended and among other things prayed that it might be decreed that the ar-

rangement entered into in Lindskold's office on or about October 20, 1929, did not amount to a completed transaction and that said deeds did not in any way convey title to appellants' property to appellees; that the deed be canceled and ordered delivered up to appellants, and that their property may be decreed to be in them free of any interest on the part of appellees.

The evidence did not show a written contract signed by appellants and appellees for the exchange of their properties. Lindskold testified that on October 20, 1929, appellees and appellants in his office signed deeds to their respective properties; that thereafter a paper signed by appellants was given to him by their daughter asking him to deliver to her the papers signed by them and directing him not to deliver the same to John Wallden. Lindskold did not deliver the papers to anyone, for the reason, as he says, that he felt he was under obligation to keep them because they were left with him until everything was settled satisfactorily to the parties. The deed from appellants to appellees was placed in an envelope which was produced on the hearing. With reference thereto Lindskold testified: "I put all the papers away in this envelope. Then I wrote this on the back of the envelope to refresh my own recollection—to know just exactly what was done by the parties—and then I put it in my safe. It says on the back of this paper, 'John C. Johnson deed, John Wallden mortgage and deed, to be delivered when both parties instruct me to deliver the same to each other.' That is what I put on this envelope and that is the instruction that I had from these parties. I wrote it right there while it was fresh in my mind."

Appellant John C. Johnson testified: "Mr. Lindskold said when the papers were left with him, when we both agree he would give the papers in his office. He said when we were both satisfied then we can have the papers." He was asked: "And these deeds and these papers were made

out to show the terms of the contract, weren't they?" and answered: "Yes; when we had everything so we could agree then it was all right." Appellees offered no testimony.

Where a deed is delivered to a third person with instructions to deliver to the grantee named therein upon the happening of an event which is certain to occur, the title vests in the grantee upon the delivery in escrow and is not derived through any contract other than the deed itself. An escrow is any written instrument which by its terms imposes a legal obligation, and which is deposited by the grantor, promisor or obligor, or his agent, with a stranger or third party, to be kept by the depositary until the performance of a condition or the happening of a certain event and then to be delivered over to the grantee, promisee or obligee. (*Main* v. *Pratt,* 276 Ill. 218.) A deed is delivered as an escrow where it is deposited with a third person, to be delivered by him to the grantee only upon the performance or fulfillment of some condition. The deed is not operative to convey the title until the happening of the event, upon which the grantee becomes entitled to the possession of the deed. (*Huber* v. *Williams,* 338 Ill. 313; *Stone* v. *Duvall,* 77 id. 475.) In order that an instrument may operate as an escrow when delivered to one not a party to the instrument, to be delivered over, in turn, to a party to the instrument upon the performance of certain conditions, there must be a valid contract between the parties as to the subject matter of the instrument and the delivery, otherwise the party making the delivery may recall the instrument. (*Main* v. *Pratt, supra.*) This court has held in a number of cases that in order to ascertain what sort of writing is sufficient to meet the requirements of section 2 of the Statute of Frauds no form of language is necessary if only the intention can be gathered, and that any kind of writing, from a solemn deed down to mere hasty notes or memoranda in books, papers or letters, will suffice, but the writings, notes or memoranda must contain on their face, or

by reference to others, the names of the parties, vendor and vendee, a sufficiently clear and explicit description of the property to render it capable of being identified from other property of like kind, together with the terms, conditions (if any) and price to be paid or other consideration to be given, and such writing, note or memorandum must be signed by the party to be charged, or if signed by an agent the authority of such agent must be in writing, signed by the party to be charged, and the contract, memorandum or note thereof made by the agent must also be in writing. (*Kopp* v. *Reiter,* 146 Ill. 437.) An undelivered deed is not, standing alone, a sufficient memorandum in writing of a parol contract for the sale of land to answer the requirements of the Statute of Frauds. (*Main* v. *Pratt, supra; Kopp* v. *Reiter, supra.*) When the deed in this case was delivered to Lindskold, the event upon which he was to deliver it to the grantee named therein was an event which was not certain to occur and no title vested in the grantee upon such delivery to Lindskold. There was no valid contract between the parties as to the subject matter of the instrument and delivery, and there is in this case no sufficient memorandum in writing of the parol contract for the sale of the land to answer the requirements of the Statute of Frauds. Appellants, therefore, had a right to recall the deed prior to its delivery and prior to the happening of the event upon which it was to be delivered.

Should Lindskold deliver the deed to appellees a court of equity would entertain a bill to remove it as a cloud upon the title of appellants. Upon the same principle upon which courts of chancery exercise their jurisdiction for the removal of a cloud upon title they may entertain jurisdiction to declare a deed in the hands of a third person, who claims no interest therein, void as against the grantee therein, where the only effect of the delivery of the deed to the grantee would be to constitute a cloud upon the title of the grantor.

From these conclusions it follows that appellants were entitled to a decree finding that the deed in question did not in any way convey title to the property described therein to appellees, that the transaction was not a completed one, and the property to be in appellants free of any interest on the part of appellees by reason of such deed.

The decree of the circuit court is therefore reversed and the cause remanded to that court, with instructions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*