**Robert MIGUEL and Jean Miguel, Plaintiffs,**

v.

**Raymond J. BELZESKI, Mark Richardson Bell, Individually and as Administrator of the Estate of Raymond J. Bell, Deceased, Holly Mills, and Kirk Daniel Bell, Defendants.**

**No. 90 C 6054.**

United States District Court, N.D. Illinois, E.D.

July 14, 1992.

---

Douglas Kent Morrison, Katherine Susan Mix, Morrison & Mix, Joseph Younes, Paul Leslie Shelton, Shelton and Younes, Chicago, Ill., for plaintiffs.

H. Nicholas Berberian, Clark K. Schirle, Neal, Gerber & Eisenberg, Jerry Michael Santangelo, Sperling, Slater & Spitz, P.C., Chicago, Ill., for defendants Raymond J. Belzeski, Holly Mills, Mark Richardson Bell and Kirk Daniel Bell.

Edward Michael Graham, Aaron E. Hoffman, Morton M. Poznak, Schwartz & Freeman, Chicago, Ill., for defendants Chicago Title & Trust Co. and NBD Trust Co. of Ill.

Roger L. Price, Steven E. Gilman, D'Ancona & Pflaum, Chicago, Ill., for defendants First Illinois Bank and Trust, Theodore A. Wynn and Lawrence J. Oakford.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This case is already almost two years old, yet only now are some of the crucial facts coming to light. In essence, the Plaintiffs, Robert Miguel and his wife Jean Miguel ("the Miguels"), are seeking to recover in damages for the improper delivery of quitclaim deeds executed by them in

favor of Raymond Bell, who is now deceased.[1] The deeds at issue are for a vacant lot in Chicago. The Defendants are Bell's heirs, who took title to the lot upon his death. Before us today is Defendants' Motion for Summary Judgment. For the reasons that follow, we deny Defendants' motion.

### Background

This tortured tale began in April 1975 when a relative of Mr. Miguel was arrested, and Mr. Miguel decided to procure a bond on his behalf. According to Mr. Miguel and his wife, who joins him as a plaintiff in this action, Mr. Miguel approached a bail bondsman James Cosentino. Mr. Miguel and Mr. Cosentino struck a deal in which Mr. Miguel would give Mr. Cosentino $5000 and quitclaim deeds[2] to a Chicago property[3] made to a Raymond Bell as collateral for the $50,000 bond. Mr. Miguel's apparent understanding was that the quitclaim deed would only be turned over to Mr. Bell if the bond was forfeited. It is uncontroverted that Mr. Miguel dealt exclusively with Mr. Cosentino and never had any dealings of any kind with Mr. Bell. (Defs.' Rule 12(m) Stmt. ¶ 10.)

In either 1975 or 1976 Mr. Miguel's relative was exonerated and the bond amount returned to whomever issued the bond. Although there is no dispute that the bond was never forfeited, it appears that Mr. Cosentino gave the quitclaim deeds to Mr. Bell sometime prior to September 1975 for in that month Mr. Bell recorded them. The two recorded deeds, which concern a single piece of property, are stamped with exemptions for the state and city transaction taxes.[4]

Mr. Miguel claims that he did not know until recently of Raymond Bell's recordation of the deed and that he has been billed for and has paid real estate taxes on the property during the time in question.[5] Both parties agree that Mr. Miguel contacted Mr. Cosentino repeatedly once his relative was exonerated seeking the return of the deeds, all of course to no avail. (*Id.* ¶¶ 12–16.)

Raymond Bell died in 1981 in Indiana, which is where his estate was probated. (*Id.* ¶ 3.) The Defendants are his four heirs who took title to the property at his death. (*Id.* ¶ 4.) Mark Bell is being sued both in his individual capacity and in his capacity as administrator of the estate of Raymond Bell. In February 1989 the Defendants deeded the property at issue to a trust at Chicago Title and Trust Company ("Chicago Title") (trust number 1092665). According to Robert Miguel, he was contacted around this time regarding his interest in the property and, through this contact, became aware of Raymond Bell's recordation of the quitclaim deeds. (Pls.' Resp. at 2.) In September 1989 Chicago Title transferred title to First Illinois Bank and Trust ("First Illinois") under trust number 9529;

1. We have jurisdiction in this matter pursuant to 28 U.S.C. § 1332.

2. Since Mr. Miguel and his wife owned the property jointly, each executed a separate quitclaim deed.

3. The property was a vacant, unimproved lot on Diversey Avenue in Chicago. (Defs.' Rule 12(m) Stmt. ¶ 1.)

4. Although the stamps are difficult to read, it appears that the stamps on the deed issued by Robert Miguel state an exemption from the Illinois Real Estate Transfer Tax Act under the provision of Paragraph E, Section 4 and from the Chicago Transaction Tax under either Paragraph c or e of Section 200.1–2B6. The stamps on the deed issued by Jean Miguel indicate the same exemption of the state tax but contain an exemption from the city tax under Paragraph c

of Section 200.1–2B6. In 1975, the state tax exemption under Paragraph E was for "Deeds where the actual consideration is less than $100 dollars." At that time, the Paragraph e exemption of city tax applied to "transactions in which the actual consideration is less than $500"; Paragraph c applied to "transactions in which the deeds secure debt or other obligation."

5. Defendants state in Paragraph 17 of their Local Rule 12(m) Statement, "From at least 1975 onward, plaintiffs did not make any regular real estate payments for the lot conveyed by the deeds to Bell in 1975." Although Plaintiffs did not file a Rule 12(n) Statement, they did register their objection to this statement of fact in their response and filed Mr. Miguel's Affidavit stating that he paid the taxes. (Pls.' Mot.Opp'n at 2; Miguel Aff. ¶ 6.) Thus, this fact appears to be disputed, although at this stage it is questionable whether it is material.

First Illinois subsequently transferred title to NBD Trust Company of Illinois as trustee under trust number 6018. In March 1990 Harris Bank/Glencoe–Northbrook took a mortgage interest in the lot. (Defs.' Rule 12(m) Stmt. ¶¶ 18–21.)

In October 1990 the Miguels filed a complaint to quiet title to the lot. They named as defendants all titleholders who took title subsequent to Raymond Bell's death in 1981.[6] This Court dismissed the action for want of prosecution on May 9, 1991, when the Plaintiffs failed to respond to the Defendants' Motion for Judgment on the Pleadings. We vacated this dismissal by an October 18, 1991 Memorandum Opinion and Order. On November 12, 1991, the Plaintiffs filed a Second Amended Complaint seeking not to quiet title, but to recover in damages from Bell's estate and heirs for the 1989 sale of the property. This Second Amended Complaint states that the quitclaim deeds were "at all times void for lack of consideration, lack of legal delivery, were recorded fraudulently, and were of no effect to pass title to Raymond J. Bell." (Sec.Am.Compl. ¶ 12.)

Defendants now move for summary judgment on essentially four distinct grounds: (1) the 1975 quitclaim deeds are unconditional on their face and, therefore, absolute at law as a conveyance to Raymond Bell; (2) Miguel's dealings were exclusively with Cosentino, consequently no fraud claim existed against Raymond Bell during his lifetime and no derivative claim exists against the heirs after Bell's death; (3) any claim that the Plaintiffs conceivably had was extinguished by the nonclaim statute of the Indiana Probate Code; (4) Plaintiffs' claim is barred by Illinois' five year statute of limitations.

### Analysis

For defendants to prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this stage, we do not weigh evidence or determine the truth of asserted matters. We simply determine whether there is a genuine issue for trial, i.e. "whether a proper jury question was presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the nonmoving party bears "the burden of proof at trial on a dispositive issue, [however] ... the nonmoving party [is required] to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)).

■ The Defendants argue strenuously that the quitclaim deeds executed by Mr. Miguel and duly recorded by Raymond Bell contain no conditions on their face and, therefore, cannot now be challenged. The Defendants are quite correct that an unambiguous deed is controlling where a claimant seeks to have extrinsic conditions recognized that would contradict or alter the legal effect of the deed. *Department of Transp. v. Western Nat'l Bank*, 63 Ill.2d 179, 347 N.E.2d 161, 164 (1976). Indeed, courts are particularly reluctant to disturb long-standing land transactions. In this case, however, Plaintiffs have explicitly challenged the validity of the delivery of the deed to Mr. Bell. (Sec.Am.Compl. ¶ 12.; Pls.' Resp. at 8.) Although we would be loathe to permit a challenge at this late date to the sufficiency of delivery based solely on the self-serving testimony of the grantor, we find that the Defendants in their Local Rule 12(m) Statement have adopted the Miguels' version of events in-

---

**6.** Chicago Title, Harris Bank, and NBD Trust Company, which were all named as defendants in the Miguels' original complaint, filed a crossclaim against Mark Bell, Holly Mills, Raymond Belzeski, and Kirk Bell. Although this cross-claim was never dismissed, we believe that it has been rendered moot by the Plaintiffs' Second Amended Complaint, which dropped the quiet title claim.

sofar as the delivery of the deed to a third party is concerned. Indeed, the Defendants ratify through repetition Robert Miguel's statement that his only dealings were with Mr. Cosentino. (Defs.' Mem. Supp. at 4.)

■ The fact that Defendants agree that Mr. Miguel never dealt with Mr. Bell directly raises squarely the problem of delivery of the deed. Proper delivery of a deed is essential to its validity. *Huber v. Williams*, 338 Ill. 313, 318, 170 N.E. 195 (1930) ("The delivery of a deed is an essential part of its execution and is indispensable to render it operative as a conveyance."); *see also* Kratovil & Werner, *Real Estate Law* § 7.03(1) (9th ed. 1988). Delivery is determined by the intention of the grantor as manifested by words and acts and the circumstances surrounding the transaction, and "unless the grantor intended to pass title no delivery occurs even though there has been a manual transfer of the deed." *Rothenberg v. Rothenberg*, 378 Ill. 242, 247, 38 N.E.2d 13 (1941); *accord Fitzgerald v. Allen*, 240 Ill. 80, 94, 88 N.E. 240 (1909) ("The intention of the grantor is the controlling element in respect to the sufficiency of the delivery of a deed in escrow."); *Marshall v. Moon*, 311 Ill. 605, 621, 143 N.E. 399 (1924) ("The grantor's motive is the controlling fact, and that intention is to be gathered from all the circumstances attending the transaction.").

■ The general rule is that when the grantor has given the deed directly to the grantee, a valid unconditional delivery is presumed, *Mitchell v. Clem*, 295 Ill. 150, 157, 128 N.E. 815 (1920), and the only conditions to which the deed may be subject are those contained in that document itself. *Logue v. Von Almen*, 379 Ill. 208, 214, 40 N.E.2d 73 (1941). In this case, however, the Defendants admit that the deed was not delivered to the grantee, Raymond Bell, but was delivered instead to a third party, Mr. Cosentino. (Defs.' Rule 12(m) Stmt. ¶¶ 10–14.) Therefore, the general pre-

sumption in favor of unconditional delivery does not apply.

The Defendants also do not appear to quarrel with Mr. Miguel's assertions that he gave the deed to Mr. Cosentino subject to certain conditions. Instead, the Defendants contend that any such conditions may not be recognized at law because they do not appear on the face of the quitclaim deeds. However, since the conditions concerned the delivery *not* the deed itself, the fact that these conditions were not apparent on the face of the deed is immaterial.[7] Tiffany, *Real Property* § 1048 (3rd ed. 1975) (recognizing the distinction between a condition which attaches to the delivery to the deed and a condition modifying the efficacy of a deed after delivery); Boyer, *Survey of the Law of Property* 421 (3rd ed. 1981) ("The fact of delivery is wholly outside of and extrinsic to the instrument itself."); *see also* Ballentine, "Delivery in Escrow and the Parol Evidence Rule," 29 *Yale L.J.* 826, 827 (1920) ("Parol evidence is always necessary to prove words or acts of the maker [of the deed] expressing his intention to make the instrument 'operative.'") Indeed, as one commentator explained, "The delivery to a third party is . . . a substitute for the insertion of the condition as part of the deed, and operates to create an exception to the parole evidence rule." Ballentine, *supra*, at 832.

A conditional delivery to a third party is commonly referred to as an escrow arrangement. This type of arrangement has a long history in the common law. As the Illinois Supreme Court explained in 1930, "A deed is delivered as an escrow where it is deposited with a third person to be delivered by him to the grantee only upon the performance or fulfillment of some condition." *Huber*, 338 Ill. at 319, 170 N.E. 195. In this case, Mr. Miguel apparently delivered the quitclaim deed to Mr. Cosentino, who was acting as a third-party escrowee. That deed listed Raymond Bell as the grantee.

---

**7.** We express no opinion as to whether the Plaintiffs' cause of action will be able to survive a challenge based on the Statute of Frauds with respect to the escrow agreement between Miguel and Cosentino.

■ The law in Illinois regarding conditional delivery into escrow is well-established. Delivery of a deed into escrow does not convey title when the conveyance is contingent upon the occurrence of an event that entitles the grantee to the possession of the deed. *Fairbury Fed. Sav. and Loan Ass'n v. Bank of Illinois*, 122 Ill. App.3d 808, 78 Ill.Dec. 290, 462 N.E.2d 6 (Ill.App.1984). Title passes to the grantee only upon the fulfillment of the condition. *Johnson v. Wallden*, 342 Ill. 201, 206, 173 N.E. 790 (1930) ("The deed is not operative to convey the title until the happening of the event, upon which the grantee becomes entitled to the possession of the deed."); *Huber*, 338 Ill. at 319, 170 N.E. 195 (same). Where the deed is passed unauthorized to the grantee prior to the fulfillment of the condition, no title passes. *LaSalle Nat'l Bank v. Kissane*, 163 Ill.App.3d 534, 114 Ill.Dec. 635, 516 N.E.2d 790, 793 (1987) ("[I]f a deed is deposited with an escrowee and an unauthorized delivery in contradiction of the escrow agreement terms occurs, no title is conveyed."); *see also Tucker v. Kanatzar*, 373 Ill. 162, 166, 25 N.E.2d 823 (1940) ("Where a deed is deposited with a third person, an unauthorized delivery before conditions have been complied with conveys no title."); *Johnson*, 342 Ill. at 206–7, 173 N.E. 790 (same); *Osby v. Reynolds*, 260 Ill. 576, 583, 103 N.E. 556 (1913) ("This court has held that where a deed is left in escrow, the unauthorized delivery before the conditions have been complied with conveys no title...."); *Forcum v. Brown*, 251 Ill. 301, 314, 96 N.E. 259 (1911) (same); *Hirschberg v. Russell*, 317 Ill.App. 329, 333–34, 45 N.E.2d 886 (1943) (same). This rule is a harsh one for subsequent purchases are left unprotected: as one court stated, an innocent purchaser "is no more entitled to protection than in case of forgery." *Forcum*, 251 Ill. at 314, 96 N.E. 259; *accord Logue*, 379 Ill. at 223, 40 N.E.2d 73 (a void deed passes no title and cannot be made the foundation of a good title even under the application of equitable doctrine that protects bona fide purchasers).

■ In the instant motion, Defendants request that we grant summary judgment in their favor. In order to do this, we must find that there is no dispute as to any material fact and that the Defendants are entitled to judgment as a matter of law. As explained above, delivery is an independent fact bearing directly on the validity of the conveyance of the real property at issue. Although after reading this opinion the Defendants may wish that they had not included so much in their Rule 12(m) Statement, the fact remains that the Defendants themselves admit that Raymond Bell never dealt with Mr. Miguel directly (and, consequently, could not have received the deeds directly from him).

The Defendants recognize that the situation described by the Plaintiffs resembles "some sort of third party" escrow arrangement. (Defs.' Mem.Supp. at 4.) They argue, however, that such an escrow arrangement never existed in fact because Mr. Cosentino acted as the principal, not an independent third party. (*Id.* at 11.) The Defendants do not present any authority for their contention that the grantee needs to be the principal or that the escrowee needs to be independent in order for the court to find an escrow arrangement.

Although direct dealings between grantor and grantee with an independent escrowee may be more common, it is not unheard of for an escrowee to play a more active role in the transaction. For example, in the seminal case *Forcum v. Brown*, 251 Ill. 301, 96 N.E. 259 (1911), two real estate agents, Schaff and Rimmerman, proposed to trade the plaintiff the defendant Brown's land in Oklahoma for his land in Illinois. Schaff and Rimmerman, who falsely represented themselves as agents of Brown, gave the plaintiff a forged deed for Brown's property after the plaintiff had given them a deed for his property made out to Brown. The two then forged the Brown's signature on the deed and conveyed the land to someone else. The defendant Brown, with whom the plaintiff had no direct dealings, turned out to be a fourteen year old boy who was not in any way involved in the fraud committed by the two real estate agents.

The plaintiff brought an action to quiet title to the Illinois property, naming all subsequent titleholders, including Brown, as defendants. Even though Brown and

the other defendants played no active role in the fraud, the Illinois Supreme Court did not hesitate to find that the plaintiff was the rightful owner of the land. It reasoned that the delivery of the deed made out to the defendant was conditioned upon the plaintiff's receipt of a valid deed to Brown's property. *Id.* at 314, 96 N.E. 259. When this transfer did not occur, the condition was not met, and the deed to the defendant became invalid. *See id.* The fact that the escrowees, Schaff and Rimmerman, were the principals in the transfer deal did not affect the court's finding that an escrow arrangement existed. *Id.* Since Defendants have not given us any authority to contradict this case, we can only conclude that Mr. Cosentino's active role in the bond deal does not preclude the Plaintiffs claim that an escrow arrangement existed. *Cf. LaSalle Nat'l,* 114 Ill.Dec. at 636, 516 N.E.2d at 791 (escrowee title company was to obtain title insurance, the condition upon which delivery was dependent).

In this court's experience it is uncommon to find that the movants have defeated their own motion by their admissions. However, in this case, the Plaintiffs—who admittedly were flailing about for a coherent legal theory on which to hang their hat—clearly have placed the sufficiency of delivery at issue. The validity of delivery is incontrovertibly a material fact that is at issue in this case; therefore, we may not grant summary judgment. *Fitzgerald,* 240 Ill. at 94, 88 N.E. 240 ("The question of such delivery is one both of law and of fact, and from the facts and circumstances of the transaction the legal question as to the delivery is to be determined.")

■ We cannot grant summary judgment for the Defendant on any of the alternative grounds that they propose. Pursuant to Illinois Revised Statute ch. 110, ¶ 13–215, the time for bringing the action will be tolled where there is fraudulent concealment of the cause of action. Where such fraudulent concealment occurs, "the action may be commenced at any time within 5 years after the person entitled to bring the

same discovers that he or she has such cause of action, and not afterwards." Ill. Ann.Stat. ch. 110, ¶ 13–215 (Smith–Hurd 1982). In this case, the Defendants admit that Mr. Miguel repeatedly asked Mr. Cosentino for the deeds and that Mr. Cosentino lead Mr. Miguel to believe that he had the deeds. (Defs.' Rule 12(m) Stmt. ¶¶ 12–16). Without question, Mr. Cosentino's representations constitute acts of fraudulent concealment. Defendants appear to argue that Mr. Miguel did not exercise due diligence.

We believe that lack of due diligence, if it needs to be proved, is clearly an issue of fact disputed by the parties. Moreover, since Plaintiffs have plead facts supporting the existence of an escrow arrangement with Mr. Cosentino acting as an escrowee and since an escrowee has a fiduciary duty to the parties to that arrangement, *see Bescor Inc. v. Chicago Title & Trust Co.,* 113 Ill.App.3d 65, 68 Ill.Dec. 812, 446 N.E.2d 1209, 1213 (1983); *Toro Petroleum Corp. v. Newell,* 33 Ill.App.3d 223, 338 N.E.2d 491, 495 (1974), we may toll the running of the statute of limitations even in the absence of due diligence. *Lewis v. Hermann,* 775 F.Supp. 1137, 1148 (N.D.Ill. 1991).[8]

The Defendants also argue that they cannot be liable for fraud derivatively through their deceased relative. Because there is more at issue in this case than a cause of action at fraud, we cannot grant summary judgment solely on this ground. However, this argument may certainly be raised again in a motion to dismiss in which the Defendants address the particular claim to which their defense is directed.

### Conclusion

Defendants motion for summary judgment is denied. A pretrial conference is scheduled for July 24, 1992, at 4:15 p.m.

---

**8.** We deny this aspect of Defendants' motion without prejudice, consequently these arguments may be raised again at a later stage of the litigation. Furthermore, we express no opinion on whether a nonclaim statute or statute of limitations would successfully bar an action to quiet title should the Plaintiffs choose to revive one.