(No. 12732.—Decree affirmed.)

FANNIE PEMBERTON et al. Defendants in Error, vs. FAN-
     NIE KRAPER, Plaintiff in Error.

*Opinion filed October 27, 1919.*

1. DEEDS—*delivery is essential to operation of deed.* Delivery
is essential to the operation and validity of a deed.

2. SAME—*question of delivery is one of intention of grantor.*
The question of delivery of a deed is largely a question of the
intention of the grantor, which must be gathered from all the cir-
cumstances connected with the transaction, and each case must be
decided on its own facts.

3. SAME—*what necessary to constitute delivery.* To constitute
delivery of a deed it must clearly appear that it was the grantor's
intention that the deed should pass title at the time and that he
should lose control over it, and if the deed is not actually deliv-
ered but is to become effective upon the happening of some future
event, such as the death of the grantor, there is no valid delivery.

4. SAME—*intention to deliver may be shown either by direct or
presumptive evidence.* The intention of the grantor to deliver a
deed and of the grantee to accept it may be shown by direct evi-
dence of the intention or may be presumed from acts and declara-
tions of the parties, and in like manner presumptions of delivery
may be rebutted and overcome by proof or presumption of a con-
trary intention.

5. SAME—*when decree setting aside deed will not be reversed.*
A decree setting aside a deed disposing of all of the grantor's es-
tate to her daughter will not be set aside except for apparent error,
where the sole issue is as to the delivery of the deed, and the ma-
terial evidence on the question, which is almost entirely contained
in the conflicting testimony of the grantor and the grantee, tends
to show the grantor did not intend the deed to be delivered before
her death.

WRIT OF ERROR to the Circuit Court of Hamilton
county; the Hon. JULIUS C. KERN, Judge, presiding.

W. L. KRONE, (J. WILSON JONES, of counsel,) for
plaintiff in error.

W. W. DAILY, and H. ANDERSON, for defendants in
error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Hamilton county to set aside a deed to a house and lot in McLeansboro, in that county, made by defendants in error, Fannie Pemberton and her husband, Benjamin T. M. Pemberton, purporting to convey said property to her daughter, Fannie Kraper. After the pleadings were settled the chancellor, on hearing, entered an order that said deed was a cloud upon the title to the premises therein described and that the same should be canceled and set aside, and that in default of the surrender of the deed for cancellation and a new conveyance by Fannie Kraper to her mother, the master in chancery should execute a deed of conveyance to remove the cloud upon the title of defendants in error. The case has been brought to this court by writ of error.

The defendant in error Fannie Pemberton is an aged woman, eighty-two years old, and in April, 1917, she and her husband occupied the premises in question, which she owned. The evidence tends to show this was substantially the only property they had. She was the second wife of her husband, Benjamin T. M. Pemberton. He had several grown children by his first marriage, while Fannie Kraper was her only child. Some time prior to April 19, 1917, Mrs. Pemberton decided that she wished to make a will leaving her property to her daughter, but after a conference with an attorney she decided to execute this deed. J. H. Lane, an attorney, testified that William T. Pemberton, a step-son of Fannie Pemberton, came to his office and asked him to call at the Pemberton home; that he went there and talked with the aged couple and then went back to his office and prepared the deed in question according to their instructions, which he gave to William T. Pemberton with the understanding that the latter was to get a notary public to take the acknowledgment. The instrument in question is in the usual form of statutory warranty deed, with re-

lease of homestead rights, and is dated and acknowledged April 21, 1917, signed by Fannie Pemberton and her husband, conveying the premises to Fannie Kraper for the expressed consideration of $1000, and also containing a clause reading: "The grantors herein reserve the possession, rents, issues and profits of the above described premises during the natural lives of both of them." It was recorded the day of its date. The step-son, William T. Pemberton, testified that after the deed was signed and acknowledged he took it and had it recorded, but that his step-mother, Mrs. Pemberton, never said anything to him about having it recorded; that he did this of his own accord, without any directions from her; that he afterwards got the deed back from the recorder and gave it to his step-mother; that so far as he remembered Mrs. Pemberton never said anything to him about the deed being recorded. No cash or other valuable consideration was turned over to Mrs. Pemberton by her daughter, Mrs. Kraper, at the time the deed was made or thereafter. While there are some allegations in the pleadings as to Mrs. Pemberton relying on her daughter providing the necessary care and nursing during the rest of her life, there is no definite testimony on this point.

Without question the deed was properly executed and acknowledged, and the only question in dispute is whether it was ever legally delivered. Mrs. Pemberton testified in her own behalf. It is evident from her testimony that she was in poor health and well along in years and did not understand fully the details or remember a great deal about the transaction in question. She testified that she did not have the deed recorded and did not know who recorded it; that her daughter, Mrs. Kraper, was not present when it was made and it was put in a drawer in witness' house and locked up; that she never delivered the deed to her daughter or told anybody to give it to her, and never knew that the property was not her own until someone came to buy the place and told her about the deed being recorded; that

she and her husband were both sick at the time the deed
was executed, and that she understood that after her death
the deed was to be given to Mrs. Kraper; that she never
talked with Mrs. Kraper about the delivery of the deed.

Mrs. Kraper testified that she lived in Metropolis, some
distance from the home of her mother, and at Christmas
time, in 1917, her mother, having received a fall, sent for
witness to come and take care of her; that during the
holiday week her mother asked her to bring a drawer con-
taining some of her papers, in order to look after a certain
insurance policy; that the drawer in question was locked
and witness opened it with a key the mother gave her and
at her mother's direction; that at that time her mother took
the deed out from among the other papers and handed it
to the witness, and said, "Here is the deed to this house
and you will have no trouble after I am dead and gone;"
that the witness opened the deed and found that her last
name was spelled wrong and that at her mother's suggestion
she had the name changed in the deed; that she gave the
deed to her step-brother, William T. Pemberton, who had
recorded it in the first instance, and told him about the mis-
take in the name, and he took it to attorney Lane and had
the change made and then to the recorder's office and had
the change made there and then brought it back and gave
it to her; that she then took it back to the house, and her
mother asked her if it had been changed all right, and she
replied that it had; that then witness took the deed to her
room and put it in a suit-case and carried it back with her
to Metropolis.

The evidence as to the delivery of this deed is confined
almost entirely to the testimony of the two witnesses most
directly interested and is conflicting. It is conceded that
delivery is essential to the operation and validity of a deed.
(*Skinner* v. *Baker,* 79 Ill. 496; *Weber* v. *Christen,* 121 id.
91; *Lanphier* v. *Desmond,* 187 id. 370.) Whether the facts
in a particular case are sufficient to establish a delivery often

presents a difficult question to determine. The question of delivery is largely one of intention. The intention of the grantor is to be gathered from all the facts and circumstances connected with the transaction. Each case must be decided by the special facts of the particular case. To constitute delivery it must clearly appear that it was the grantor's intention that the deed should pass title at the time and that he should lose control over it. If the deed is not actually delivered but is to become effective upon the happening of some future event, such as the death of the grantor, there is no valid delivery. The intention to deliver on the one hand and of acceptance on the other may be shown by direct evidence of the intention or may be presumed from acts and declarations of the parties. In like manner presumptions of delivery may be rebutted and overcome by proof of a contrary intention or by acts and declarations from which the contrary presumption arises. (*O'Brien* v. *O'Brien,* 285 Ill. 570, and authorities there cited.) When a deed is in the possession of the grantee named therein, the presumption of law, in the absence of proof to the contrary, is that the deed was signed and sealed according to its purport, and that the grantee, having it in his possession, received it from the grantor,—and this presumption that it has been delivered can only be overcome by clear and convincing proof. (*Reed* v. *Douthit,* 62 Ill. 348; *Valter* v. *Blavka,* 195 id. 610; *Inman* v. *Swearingen,* 198 id. 437.) The deed here had also been recorded, and recording also raises the same presumption that a deed has been delivered. (*Blake* v. *Ogden,* 223 Ill. 204; *Harshbarger* v. *Carroll,* 163 id. 636.) But this presumption is fully overcome in this case by the testimony of William T. Pemberton that he had the deed recorded on his own motion and without any instructions or knowledge of his step-mother. While there is considerable difference in the testimony of Mrs. Pemberton and her daughter as to what occurred at the time the deed was taken from the drawer

where it was being kept by the mother, it is evident that much of the daughter's testimony, if not all of it, as to what was done with the deed might be true and her mother's version of the transaction might also be true, if the mother thought all the time that the deed was being returned to the drawer each time it was taken out and that it was not delivered to the daughter and did not have any binding force until her death. Manifestly, that was her understanding and intention. She, herself, was practically bedridden at the time these occurrences took place. The turning point in the case is whether Mrs. Pemberton, when they were looking at the insurance papers, actually turned the deed over to her daughter with instructions to take it with her, or whether she simply showed it to her daughter and the latter took it without knowledge or instruction upon her mother's part and placed it in her suit-case. In view of all the circumstances in the case, the record tends to show that the mother never intended to have the deed delivered to her daughter before the mother's death. The testimony on this question was heard by the chancellor, and as was said by this court with reference to the delivery of other deeds so it may be said here, particularly with reference to the testimony of Mrs. Pemberton: "The weight of her testimony, as of all the testimony in the case, was for the trial court. This court will not reverse the finding of the chancellor unless it is apparent error has been committed. (*Biggerstaff* v. *Biggerstaff,* 180 Ill. 407; *Dowie* v. *Driscoll,* 203 id. 480; *Farrenkoph* v. *Holm,* 237 id. 94; *Amos* v. *American Trust and Savings Bank,* 221 id. 100.) The chancellor saw and heard this witness testify and was in much better position to judge whether her testimony was worthy of belief than we are from a perusal of the record. We cannot say that it did not justify him in setting aside the deed." *Ackman* v. *Potter,* 239 Ill. 578.

The decree of the circuit court will be affirmed.

*Decree affirmed.*