(No. 24962.—

VERNON B. STANFORD, Appellee, *vs.* SARAH E. STANFORD *et al.* Appellants.

*Opinion filed February 20, 1939—Rehearing denied April 19, 1939.*

212

STONE, FARTHING, and WILSON, JJ., dissenting.

H. D. McCOLLUM, for appellants.

LEFORGEE, SAMUELS & MILLER, (CHARLES C. LE-FORGEE, CARL R. MILLER, and WILLIAM M. RICE, of counsel,) for appellee.

Mr. CHIEF JUSTICE SHAW delivered the opinion of the court:

This is a direct appeal from a decree of the circuit court of Clay county whereby six separate deeds to six different forty-acre tracts of land were set aside for want of delivery

and as an attempted testamentary disposition of the property without complying with the Statute of Wills. Although the witnesses were numerous, and there are some slight discrepancies in their testimony, there is nevertheless no serious conflict on any material or important point.

The facts are substantially as follows: Jones Stanford, in his lifetime, owned 240 acres of land, consisting of six forty-acre tracts, and had seven children. One of these children was the plaintiff (appellee) who had been given an education by his father so that he might become a doctor, and it is clear from the record that the father considered this education the equivalent of one of the forty-acre tracts, so that he and his wife conceived the plan of giving him nothing, but to give a forty-acre tract to each of the other six children.

Pursuant to that plan, the father, Jones Stanford, consulted an undertaker who was also a notary public, and had him come out to the Stanford home where the six deeds in question were prepared, executed and acknowledged. The notary public informed Jones Stanford that these deeds would not be valid without delivery. Each of the deeds contained the following clause: "Hereby reserving all rights and income from said premises hereby conveyed until the death of each of the makers named herein." It is important to observe that the title to this land was in Jones Stanford and that no part thereof, either by joint tenancy or tenancy in common was in his wife, now his widow. The testimony of this widow was to the effect that she and her husband both understood they were making a will to settle their estate. Inasmuch as this testimony is beneficial to herself and is of doubtful competency, we have not given it any consideration, although no adult defendant objected to it. It is not necessary to a decision of the case that it should be considered.

The notary public who drew the deeds testified that Jones Stanford retained control of them the last he knew

about the matter. There is no other evidence concerning the disposal of these deeds except the testimony of the plaintiff himself, which is also of doubtful competency, but without which there would be no evidence at all of even a semblance of delivery, so it makes no difference in the result whether we decline to consider it at all, or search it for some admission against interest. His testimony was that his father handed him a sealed envelope and, without telling him what it contained, said: "Here are some papers I want you to take back with you and put in your safe and keep them until mother and I are both gone."

After the death of Jones Stanford, the family started looking for a will and, after visiting some banks where the deceased was known to have done business, they could find none. The plaintiff then spoke of the envelope which he had received and the contents of which he did not know, and said he had been instructed to hold it until the death of the survivor of his father and mother. Apparently with the consent of the entire family it was opened and the deeds in question were discovered. He did not then make any delivery of these deeds but consented to their being taken away for an examination by an attorney and upon that examination, with or without the advice of the attorney, but, in any event, without the consent of the plaintiff, they were placed on record. After extended negotiations, and at least one letter, in which appellant pointed out that he felt it his duty to protect his mother's interest in the property, this suit was started, it further appearing from the record, indirectly, that the land in question has acquired unusual value because of the actual or probable discovery of oil.

In his lifetime, Jones Stanford continued in the possession of and farmed these lands until his death, which occurred July 11, 1937. Between the date of the execution of these deeds and the date of his death, Stanford, joined

by his wife, Sarah E. Stanford, executed an oil and gas lease on the entire premises under date of April 14, 1936, under which they represented themselves to be the owners in fee of the premises in question.

The trial court found that the deeds in question were deposited with the plaintiff for safe-keeping, only, and they remained subject to the further wishes and control of Jones Stanford, and that he died without having delivered them and was therefore the owner in fee of the premises in question at the time of his death; that the deeds were invalid and ineffective to convey any title, either past, present or future, and that they had gone into the possession of the grantees, who had caused them to be recorded without any legal or equitable right on the part of the said grantees to accept or record them. The court further found that the instruments in question were without legal effect as a last will and testament because they were not executed in accordance with the Statute of Wills. A decree was entered confirming the validity of the oil and gas lease and ordering the various deeds, declared null and void, to be expunged from the record.

Whether or not a deed has been delivered depends on the intention of the grantor, and the determination of that intention is a question of fact depending on the circumstances of each case. (*Wilson* v. *Wilson,* 158 Ill. 567; *Jordan* v. *Davis,* 108 id. 336; *Bovee* v. *Hinde,* 135 id. 137; *Oliver* v. *Oliver,* 149 id. 542.) The intention of a grantor to deliver a deed may be shown by direct evidence or presumed from acts and declarations of the parties, and, in like manner, presumptions of delivery may be rebutted and overcome by proof or presumption of a contrary intention. (*Pemberton* v. *Kraper,* 289 Ill. 295.) If a deed is not actually delivered and does not actually take effect during the grantor's lifetime, it amounts to a testamentary disposition and is void if it does not comply with the Statute of

Wills. (*Johnson* v. *Fulk*, 282 Ill. 328.) When a grantee claims under a deed not in his possession at the death of the grantor, he has the burden of proving delivery, and it is incumbent upon the grantee to overcome the *prima facie* case against delivery by showing the terms and conditions of the escrow and their complete performance. (*Huber* v. *Williams*, 338 Ill. 313.) The presumption of delivery arising from proof of the execution and recording of a deed, does not attain the dignity of evidence, but completely disappears by proof that the title was never actually delivered to the grantee. *Byerly* v. *Byerly*, 363 Ill. 517.

With these principles in mind, it is necessary to conclude that the record amply sustains the finding of the chancellor. There can be no doubt from this record that Jones Stanford had a testamentary intent to give six of his children forty acres of land each and to give nothing to the plaintiff because of the money he had spent on plaintiff's education, the intent being further, and certainly not to be doubted, that his wife should have a life estate in the property should she survive him, as she has. It is our opinion that this reservation gives a clear insight into the grantor's intention and that it is of controlling importance. The question of intention of the grantor and the actual delivery of the deeds are questions of fact which have been passed upon by the chancellor and his finding is amply supported by the evidence. Under such circumstances, and in a similar case, we have held we would not disturb the decree. *Pemberton* v. *Kraper, supra.*

We find no error in the decree of the circuit court of Clay county, and it is affirmed.

*Decree affirmed.*

Stone, Farthing, and Wilson, JJ., dissenting.