(No. 26391.—

SAMUEL MAX ROTHENBERG *et al.* Appellants, *vs.* JENNIE ROTHENBERG, Appellee.

*Opinion filed November 24, 1941.*

JOHN G. FRIEDMEYER, and HERMAN H. COHN, for appellants.

ROY GEIBE HILL, for appellee.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

This is a direct appeal from a decree of the circuit court of Sangamon county. Appellee, Jennie Rothenberg, owned a residence property described as lot four in block three of Thomas Lewis' Third Addition to the city of Springfield and on February 26, 1940, signed a warranty deed conveying the property to her brother Samuel Max Rothenberg, one of the appellants. He filed the deed for record the same day it was executed and a few days thereafter he and his wife signed a deed conveying the property to a third party, who immediately reconveyed to the grantors as joint tenants with the right of survivorship. After the three deeds were recorded appellee caused an instrument to be recorded in the office of the recorder of deeds which gave notice to whom it might concern, that her deed to her brother dated February 26, 1940, was without consideration and had been obtained by fraud, misrepresentation and duress. Appellants then instituted this suit to remove the notice as a cloud on their title. Appellee answered by making a general denial as to appellants' right to equitable relief and by way of special defense and counter-claim alleged that the deed from her to Max was void for want of delivery and that it had been procured

by fraud and misrepresentation. She asked that the property be reconveyed to her and for general relief. After a hearing before the chancellor a decree was entered dismissing appellants' complaint for want of equity and granting the prayer of the counter-claim. It is conceded that if appellee's deed should be set aside, the other deeds should also be declared invalid.

There are suggestions in appellee's brief to the effect that the deed was obtained from her by threats amounting to duress, but her answer and counter-claim do not plead facts upon which a charge of duress could be founded. The decisive question is as to whether there was delivery of the deed. Appellee, a spinster, fifty-eight years old, had no previous business experience. Her mother was insane for a number of years prior to her death in 1929 and during that time appellee cared for her in the home. After the mother's death she kept house for her father until his death in 1937. She rented the property in question for $40 per month. In addition to this she owned another residence property which had a rental value of $35 per month. She occupied a part of the house, where she lived alone, and rented the remainder. Her total gross annual income, including the rentals and income from other sources, was about $1000 per year.

Some years previous to the execution of the deed in question appellee and her brother had some litigation, the nature of which is not disclosed. Ill feeling followed the litigation and for several years appellee did not know the whereabouts of her brother. In December, 1939, through the aid of police officers, she located him in St. Louis where he and his wife were operating a small hotel. Immediately thereafter appellants came to Springfield and after making some preliminary arrangements in regard to the rental of the property appellee had occupied as a home, she went to St. Louis and stayed at appellants' hotel. She arrived there January 18, 1940. All agree that soon after her arrival

in St. Louis there was conversation between appellee and her brother relative to her conveyance of property to her brother. They do not agree as to the motive that prompted appellee to consider the making of such conveyance. The brother testified appellee said she thought he had been wronged in their previous litigation and wanted to convey the property to him to ease her conscience. Appellee denies this and says her brother threatened to have her sent to an insane asylum and likened the possibilities of her commitment to that of their insane sister who had been confined in an asylum for thirty years. Appellee testified that in the conversation in St. Louis she told her brother that if she made the deed she wanted to retain a life estate. Appellants' version of the conversation is that nothing was said in regard to a life estate.

On February 26, 1940, appellee and her brother went to Springfield to have a deed prepared. They went to appellee's safety deposit box in the bank and removed an abstract of title to the property in question. They took the abstract to the office of an abstract company to have a deed prepared. Appellant told the scrivener appellee wanted to transfer the property described in the abstract to him. The scrivener obtained the names of the grantor, the grantees and other necessary data and prepared the warranty deed in question. Max concedes that while they were in the abstract office appellee made inquiry as to whether the deed reserved to her a life estate. It was stipulated that if the scrivener was called as a witness he would testify that he prepared the deed and that before appellee signed the same she asked him if by the deed she would have the right to keep possession and control of the premises during her lifetime and would be entitled to the rents and profits therefrom; that he (the scrivener) told her he was not an attorney and if she wanted to be sure about that she had better go to her attorney and have the deed made; that she then left the abstract office followed by

Max; that later she returned, signed the deed and after he notarized it Max took it into his possession and left the office. Appellee and her brother agree they left the office before signing the deed but do not agree as to the purpose. He says he noticed a friend on the street and went out to greet him. Appellee testified that she left because she was unwilling to sign the deed and that her brother followed. Max testified that after the conversation with the friend in front of the abstract office, he asked appellee about the deed and she said: "Well, don't you want to put in that— won't you put in that life interest"? to which he replied that he would not accept the title with strings on it; then appellee said: "Well, after all, I know it's yours and I want you to have it," and that they returned to the abstract office and appellee signed the deed. He further testified that soon after the deed was notarized he took it to the recorder's office and had it recorded, that appellee accompanied him to the court house but declined his invitation to go to the recorder's office and said she was going to see some one in another part of the court house.

Appellee testified that after the conversation with Max's friend in front of the abstract office he said the deed is all right, "you go in and sign it, and if it is not we will take it to" * * * (her attorney) and "if it is not all right we'll just tear it up;" that they then returned to the abstract office, she signed the deed and after it was notarized Max put it in his pocket and they left the abstract office. They walked a short distance when he told her to wait and that he would soon return. She waited and when he returned she asked to go see her attorney and he told her he had been absent from St. Louis such a length of time that it was necessary to return there at once and that they would see a lawyer in St. Louis about the deed. Appellee says that after they returned to St. Louis her requests as to seeing an attorney were ignored.

On March 8, appellee wrote a letter to the insurance agency with whom she carried insurance on this property

and directed a transfer of the insurance policy to her brother. She testified Max dictated the letter and made her sign it. On March 12, appellants went to Springfield and collected the rent from the tenants in possession of the property. The following day appellee returned to Springfield and demanded the rents. The tenants refused and told her that Max owned the property. Appellee testified this was the first information she had that the deed had been recorded. She did not return to appellants' hotel in St. Louis.

Witnesses who lived at appellants' hotel and saw appellee while she was staying there testified to conversations they had with her. The substance of such conversations corroborates appellants as to the purpose for which the deed was made. Such evidence also shows that after she had executed the deed she had expressed approval of the transaction to the witnesses. There is no other evidence corroborative of either party's version as to what was said at Springfield out of the presence of the scrivener.

It is apparent that the question of delivery of the deed turns on the credence to be given to the testimony of appellee and her brother. If he is to be believed, there was a delivery of the deed free from fraud and trickery. If appellee's account of the transaction is true, then the deed came into the brother's possession on the condition that if appellee's attorney did not advise that it reserved a life estate to her, it was to be destroyed. Under her version, appellant obtained possession by trickery and fraud.

The delivery of a deed is essential to its validity. (*McClugage* v. *Taylor*, 352 Ill. 550; *Riegel* v. *Riegel*, 243 id. 626.) Delivery is determined by the intention of the grantor as manifested by words and acts and the circumstances surrounding the transaction, and unless the grantor intended to pass title no delivery occurs even though there has been a manual transfer of the deed. (*Stanford* v. *Stanford*, 371 Ill. 211; *Redmond* v. *Gillis*, 346 id. 223; *Troup* v. *Hunter*, 300 id. 110; *Nofftz* v. *Nofftz*, 290 id. 36;

*Sample* v. *Geathard,* 281 id. 79.) The mere fact that appellee permitted her brother to take manual possession of the deed in the abstract office does not establish delivery of the instrument for, if her evidence is true, he came into possession of the deed solely for the purpose of taking it to her attorney for examination and it was so delivered into his possession without any intention on her part to make a present delivery. There can be no valid delivery without the knowledge and consent of the grantor.

Appellants contend that the letter to the insurance company directing the transfer of the insurance shows a ratification of the whole transaction. The evidence was admissible in corroboration of appellants' theory of the case but it does not, in itself, establish a ratification. The rule is, that where the possession of a deed which has never been delivered is obtained surreptitiously by fraud or trick and placed upon record by the grantee, nothing short of an explicit ratification of the deed, or such an acquiescence after a knowledge of the facts as would raise a presumption of an explicit ratification, can give the deed vitality. (*Hadlock* v. *Hadlock,* 22 Ill. 384.) The letter did not meet such requirement.

From an examination of the evidence we conclude that the chancellor's finding that the deed was not unconditionally delivered should be sustained. He saw and heard the witnesses and is better qualified to judge of the weight to be given to their testimony than is a court of review. The rule in chancery cases is that where· the evidence is conflicting and witnesses are heard in open court, as in this case, an error in finding as to the facts should be clear and palpable to authorize a reversal. *Elmstedt* v. *Nicholson,* 186 Ill. 580; *Brown* v. *Stewart,* 159 id. 212; *Kusch* v. *Kusch,* 143 id. 353.

For the reasons assigned, the decree of the circuit court is affirmed.

*Decree affirmed.*