MINNIE F. OSBY, Appellee, *vs.* W. N. REYNOLDS *et al.* Appellants.

*Opinion filed December 17, 1913.*

1. DEEDS—*when deed will be set aside because name of grantee is inserted after delivery.* Where a deed with a blank grantee is delivered in escrow and the proposed purchaser of the property inserts the name of a third person as grantee after receiving the deed from the depositary the deed should be set aside as against the proposed purchaser and all others having notice, where there is no proof that the grantor or the real owner of the land, or her agent, sanctioned the insertion of the name or in any way ratified the transaction. (*Abbott* v. *Abbott,* 189 Ill. 488, distinguished.)

2. SAME—*conditions upon which deed is placed in escrow may be proved by parol.* The conditions upon which a deed placed in escrow is to be delivered may be proved by parol evidence.

3. SAME—*deed delivered in violation of escrow agreement conveys no title.* The unauthorized delivery, by the depositary, of a deed which has been placed with him in escrow conveys no title and will be set aside, particularly where the parties who set up claims under the deed are not innocent purchasers for value.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

J. W. TEMPLEMAN, (ANDRUS & TRUTTER, of counsel,) for appellants.

FRANK P. DRENNAN, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Sangamon county by the appellee to set aside certain deeds to two lots, improved by a house and apparently a small store, in Springfield, Illinois, as a cloud upon her title. After the pleadings were settled the cause was referred to a master in chancery to take evidence, who reported recommending that the deeds be set aside. The chancellor approved this report and entered a decree accordingly. This appeal has been taken from that decree.

The lots in question were owned by Minnie F. Osby. Her husband, James B. Osby, apparently with her sanction, entered into negotiations, through F. J. Evans, a real estate dealer in Springfield, with W. N. Reynolds, of Peoria, with reference to trading the two lots in question and one other lot in the same city for a farm of 160 acres in Hancock county, Illinois. On January 30, 1909, a written contract was entered into between Osby and Reynolds, which recited that the latter had sold and exchanged the farm, (describing it,) subject to a $5000 encumbrance and drainage assessments, to the former, and accepted in payment the three lots, subject to the tenants' leases thereon. The contract concluded as follows: "This deal to be closed by each submitting to the other abstracts showing good merchantable title, subject to the conditions and provisions herein mentioned. All deeds and abstracts to be placed in the hands of Andie Terrill, of Springfield, Illinois, and to be delivered to the respective parties as soon as they have complied with this contract. The abstracts to be delivered within ten days from date, with deeds at the same time. Each party showing tax receipt showing taxes paid for the year 1908. Deed to Hancock county, Illinois, farm to be executed by A. G. Brock." The contract was signed by W. N. Reynolds and James B. Osby, but not by Mrs. Osby or anyone purporting in the instrument to be her agent or attorney. A few days later an additional memorandum was signed by Reynolds and Osby, in which it was recited that the farm was "all level, black land, of which there has been in cultivation 120 acres, 40 acres in scattering timber. * * * This is a splendid farm but needs drainage before it can be cultivated to advantage. There was not a great deal of this land farmed last year. * * * This description is given by W. N. Reynolds to J. B. Osby and referred to and made a part of the contract of the date of January 30, 1909."

260 — 37

At the time the original contract was executed and left with Terrill the evidence tends to show that the abstract of the farm and a deed with the grantee's name left blank were also delivered by Reynolds to Terrill. Osby delivered to Terrill at the same time, or shortly thereafter, a deed from Mary E. Lyon, dated December 16, 1908, conveying the two lots here in question. Osby testified that at the time it was executed the name of his wife, Minnie F. Osby, was written in as grantee, and that before he delivered it to Terrill, with the knowledge of Terrill and Reynolds, he erased the name of Minnie F. Osby, leaving the place for the grantee's name blank. Terrill denies that he knew that Mrs. Osby's name had been erased as grantee, and testified that he supposed the deed was acknowledged by the grantor with the name of the grantee blank. Reynolds himself does not directly contradict Osby as to whether he knew of such erasure. He was not asked specifically by either counsel that question. These lots were located on Stuart avenue. The contract provided that Osby should also give in exchange for the farm a lot located on South Eleventh street, in Springfield. It appears from the evidence that this last mentioned lot was owned by one Thomas E. Lyon, who was apparently only a very distant relative of Mary E. Lyon. He had given no authority to Osby to trade his lot and no deed for it was ever executed and placed in escrow with Terrill.

Osby testified that Reynolds represented the farm to be well tiled, except 40 acres; well fenced; all in good shape, with about 100 acres of growing wheat; about two miles from a small town; that the taxes and assessments were about $35 a year and the land was worth $160 to $180 an acre; that the trade was made on condition that the land should come up to these representations. Reynolds denies that he agreed to any conditions as to the farm except those stated in the original and supplemental contracts. The master found, and the decree stated, that the farm

was worth little, if anything, above the amount of the encumbrance.    The testimony in the record tends strongly to support this finding.

After it was learned that Osby could not convey the lot on South Eleventh street Reynolds came to Springfield and had a conference with Osby, in Terrill's presence.    Reynolds and Terrill both testified that at this interview a new agreement was made with Osby; that Reynolds agreed to waive the right to insist upon a deed to the lot on South Eleventh street and to trade the farm for the lots on Stuart avenue described in the deed already deposited with Terrill; that each party was to furnish tax receipts to Terrill, and that thereupon the two deeds, the names of both grantees being blank, were to be delivered by Terrill.    Osby denies this, and insists that he at that time stated that the farm was not up to the representations made by Reynolds, and that he did not want to make the trade, even leaving out the Eleventh street lot; that Reynolds thereupon replied that he would consider the matter further and let him know what he would do.    Reynolds shortly thereafter deposited the tax receipts for the farm with Terrill, and the latter, on March 23, 1909, wrote Osby, telling him that Reynolds insisted upon closing the trade, and that he, (Terrill,) under the agreement, would have to turn the papers over to him.    A few days thereafter Terrill mailed the deed to the Stuart avenue lots to Reynolds and mailed the deed and abstract to the farm to Osby.    Osby testified that he was out of town at the time said letter was mailed to him and did not receive it until about the time the package came from Terrill containing the deed and abstract to the farm, which he immediately returned to Terrill, unopened.    The evidence was uncontradicted that he then insisted that Terrill had given up the deed to the Stuart avenue lots without authority.

The deed from Mary E. Lyon to Mrs. Osby had never been recorded.    After Reynolds received it from Terrill,

with the name of the grantee blank, he inserted the name of his brother-in-law, William Huffman, of Peoria, as grantee. It was thereupon filed for record in Springfield on March 29, 1909. Reynolds claimed that, in effect, he sold this property to his brother-in-law as a part of a number of real estate and other transactions he had with him. Huffman himself did not testify. E. A. McCurdy, a real estate dealer in Peoria, stated he purchased the Stuart avenue lots a few days later. McCurdy and Reynolds testified that the former purchased the property, through Reynolds, from Huffman. McCurdy further testified that the consideration for the lot was $900, which he paid by a check to the order of Huffman, delivering the check to Mrs. Reynolds at her home in Peoria, as Reynolds was not in the city at the time; that on receiving the deed he went to Springfield the same day and had it recorded. He did not produce the check, testifying that he had looked for it but could not find it, as his office files had been somewhat mixed up while he was sick. Reynolds testified that he understood the check was received by his brother-in-law, Huffman, and that they had divided the proceeds in some way in the adjustment of their various transactions, but he could not testify just what part he and Huffman each received out of the $900. Appellants do not claim that Osby or his wife knew that Huffman's name was to be inserted as grantee, or that there was any talk or understanding as to any particular name being inserted as the grantee in the deed to the Stuart avenue lots.

The decree found that McCurdy was not an innocent purchaser and that each of the deeds in question purporting to convey the Stuart avenue property was void and transferred no title. Counsel for appellee claims that the deeds were void because the grantee's name was inserted in the deed from Mary E. Lyon after it was delivered by Terrill to Reynolds, without the authority of the grantor or of Mrs. Osby, or her husband acting as her agent; that

said deed was also void because delivered by Terrill contrary to the understanding and conditions upon which it was deposited with him. Counsel for appellants, on the other hand, contend that the deeds were not void for either of these reasons.

Under the common law a deed, to be binding, must be signed, sealed and delivered by the parties. "Every deed well made must be written,—*i.e.,* the agreement must be all written before the sealing and delivery of it, for if a man seal and deliver an empty piece of paper or parchment, albeit he do therewithal give commandment that an obligation or other matter shall be written in it, and this be done accordingly, yet this is no good deed." (Sheppard's Touchstone, 54.) The authorities are not in harmony as to whether, when the grantee's name in a deed is left blank, it can be inserted after delivery, in the absence of the grantor, without his authority in writing. (*Upton* v. *Archer,* 10 Am. Rep. 266, and note; *Stahl* v. *Berger,* 13 Am. Dec. 666, and note.) This court, in *People* v. *Organ,* 27 Ill. 27, stated (p. 29): "It has been held that a paper signed and sealed in blank, with verbal authority to fill the blank, which is afterwards done, is void as to the parties so signing and sealing unless they afterwards deliver or acknowledge or adopt it." To the same effect are *Chase* v. *Palmer,* 29 Ill. 306, *Whitaker* v. *Miller,* 83 id. 381, *Mickey* v. *Barton,* 194 id. 446, and *Robinson* v. *Yetter,* 238 id. 320. This court, however, held in *McNab* v. *Young,* 81 Ill. 11, that a deed which was executed with a blank as to the grantee's name was valid if delivered after the grantee's name was inserted by the agent of the grantor. It was also held in that case, as it was in *Gray* v. *Lamb,* 207 Ill. 258, that the inserting of the grantee's name under such circumstances could not be raised against an innocent purchaser for value. It was also held in *Donason* v. *Barbero,* 230 Ill. 138, that where the name of the grantee was without authority from the grantor inserted in the

blank left in the deed and the deed thus delivered without authority, the delivery could thereafter be ratified by those interested.

Manifestly, under the above authorities, the name of Huffman being inserted by Reynolds himself after the delivery by Terrill to Reynolds, there being no evidence tending to show that the insertion of his name was sanctioned or approved by Mary E. Lyon, (the original grantor,) Mrs. Osby, or her husband acting as her agent, this deed should be set aside so far as the appellant Reynolds is interested. This necessarily follows under these authorities, without any reference to whether Reynolds or Terrill knew as to the erasure before the deed was deposited with Terrill. What is said by this court in *Abbott* v. *Abbott*, 189 Ill. 488, relied upon by appellants, does not in any way conflict with the authorities heretofore referred to as to the insertion of the grantee's name in the deed after its delivery. It was there held that the erasure and change were made before the final delivery of the deed.

The evidence tends strongly to show that McCurdy had knowledge of the circumstances surrounding the transaction and was not an innocent purchaser. He had engaged in several real estate deals before this with Reynolds. His failure to produce the check claimed to have been given for the purchase was not, in our opinion, satisfactorily explained. The fact that he made a personal trip to Springfield from Peoria to record the deed the very day it was delivered to him tends to show that he felt the necessity of haste. The uncertain character of Reynolds' testimony as to the payment of the purchase money and how it was divided between himself and Huffman lends support to appellee's contention that McCurdy was not an innocent purchaser for value. Furthermore, we hold from this record that the deed in question was delivered to Reynolds without authority. It is not claimed by appellants that the conditions provided in the written contract were complied with

before the delivery. On the contrary, they insist that those conditions as to the exchange of the lot on South Eleventh street were changed by oral agreement with Osby and that they waived the delivery of the tax receipts to Terrill by Osby for the Stuart avenue lots. It is well settled that the conditions upon which a deed is delivered in escrow may be proved by parol evidence. (1 Devlin on Deeds,— 3d ed.—sec. 312a.) This is conceded by appellants. They insist, however, that they proved by parol what the new agreement and conditions were. As has been stated, the evidence of Osby disagrees flatly with that of Reynolds and Terrill as to whether a new agreement was made. We think the circumstances shown by this record with reference to a new agreement are more consistent with the claim of Osby than that of Reynolds. They concede, in their testimony, that Osby stated he was not satisfied with the farm and that it was not up to what he understood it was to be. It is plain from the supplemental agreement that there was some understanding as to the character of the farm land. In our judgment the testimony indicates that Reynolds and Terrill knew that Osby did not want the deed delivered without a further understanding with reference to the trade. This court has held that where a deed is left in escrow, the unauthorized delivery before the conditions have been complied with conveys no title, and that even an innocent purchaser is no more entitled to protection than in case of perjury. (*Forcum* v. *Brown,* 251 Ill. 301; *Stanley* v. *Valentine,* 79 id. 544.) We are not compelled, however, to go to that length in this case to hold the deeds to Huffman and McCurdy void, as we have stated that we do not believe they were innocent purchasers for value, without notice.

Certain other points are raised in the briefs, which, in view of what has already been said, need not be considered.

The decree of the circuit court will be affirmed.

*Decree affirmed.*