(No. 26188.—

E‌LIZA M. D‌URBIN *et al.* Appellants, *vs.* T‌HE C‌ARTER O‌IL C‌OMPANY *et al.*—(W. H. D‌AVIS *et al.* Appellees.)

*Opinion filed Sept. 17, 1941—Rehearing denied November 18, 1941.*

SMITH, J., took no part.
SHAW and WILSON, JJ., dissenting.
STONE, J., specially concurring.

HUGH V. MURRAY, JR., and MURRAY & MILLER, for appellants.

W. F. SCHUERMEYER, W. F. SONNEMANN, GREEN & FARMER, PAUL TAYLOR, W. S. HOLMES, and CRAIG & CRAIG, for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

George H. Durbin owned 210 acres of land in Fayette county, Illinois, on September 16, 1936. There is no dispute that he and his wife executed oil and gas leases which now belong to the Carter Oil Company, and which covered the 180 acres here in question. The Durbins filed this suit to set aside, as a cloud on their title, a mineral deed

which purported to have been executed by the husband and wife, September 16, 1936, to "H. W. Davis of Tulsa, Oklahoma," and subsequent mineral deeds in the chain of title from Davis. The Durbin deed purported to convey an undivided one-half interest "in and to all of the oil, gas, in and under and that may be produced from the following described lands situated in Fayette County, State of Illinois, to-wit: [Here follows the description of the 180 acres in question.] (Grantor reserves the 10 cent lease rental on present lease.) * * *. This sale is made subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease of record heretofore executed; it being understood and agreed that said Grantee shall have, receive and enjoy the herein granted undivided interest in and to all bonuses, rents, royalties and other benefits which may accrue under the terms of said lease insofar as it covers the above described land from and after the date hereof, precisely as if the Grantee herein had been at the date of the making of said lease the owner of a similar undivided interest in and to the lands described and Grantee one of the lessors therein.

"Grantor agrees to execute such further assurances as may be requisite for the full and complete enjoyment of the rights herein granted and likewise agrees that Grantee herein shall have the right at any time to redeem for said Grantor" etc.

George H. Durbin died testate before the hearing. His widow and sole devisee, Eliza M. Durbin, and their adopted son, Silas Durbin, (to whom they had conveyed part of the 180 acres, August 9, 1938,) prosecuted the suit after Durbin's death. The chancellor dismissed, for want of equity, the amended complaint as amended and granted specific performance as prayed in the counter-claim, except as to a homestead interest of $1000 in the southeast quarter of the southeast quarter of section twenty-eight in township eight north, of range three east of the Third Principal

Meridian, situate in Fayette county, Illinois, a part of the lands here involved, which homestead interest was decreed to belong to Eliza M. Durbin and was ordered set off to her by commissioners. Subject to this homestead, she was ordered to make a mineral deed to H. W. Davis conveying one-half of the oil and gas underlying the 180 acres, subject to the above mentioned oil and gas leases. This deed was to be made within thirty days after the homestead was set off to her. If she did not make the deed, the master in chancery was to execute it in her stead. Those cross-appellants who claimed by *mesne* conveyances under Davis, were to receive the benefits which flowed from the new deed.

The Durbins have appealed from the portions of the decree which dismissed their complaint for want of equity and which granted specific performance. W. O. Allen, Davis, and his grantees by *mesne* conveyances, have appealed from the portion of the decree which held Eliza M. Durbin had a homestead in the forty-acre tract above described. A freehold is involved and this court has jurisdiction.

September 16, 1936, a notary public and real estate broker named Charles L. Kanatzar of St. Elmo, Illinois, went to the home of George H. and Eliza M. Durbin. Kanatzar had been active in securing mineral deeds and oil leases from landowners in Fayette county. He told the Durbins what other people had been getting for mineral deeds and oil and gas leases; that seventy-five cents an acre was a good offer; that it "would be like finding money in the road" and that if a well were drilled on their land, salt water would be found instead of oil. The Durbins were upwards of eighty years of age and George's sight was so poor he could not see to sign his own name. They finally accepted Kanatzar's seventy-five cent offer for a mineral deed to convey an undivided one-half interest in the oil and gas underlying and to be produced from the

180 acres. In this same transaction, Kanatzar bought at $22.50 each, a paid-up ten-year oil and gas lease to 20 acres and a mineral deed to a one-half interest in the oil and gas under 30 acres of land. These two instruments were dated September 15, 1936, the day before, and were taken in the name of his cousin, A. B. Chance, as lessee and grantee, respectively, who was Kanatzar's straw-man. That deed and lease are not involved in this suit.

Kanatzar was the real party in interest although Davis was named as grantee in the mineral deed here involved. He owed the Durbins seventy-five cents an acre for 180 acres covered by that deed and $45 for the lease and deed to his straw-man and cousin, Chance, or a total of $180.

Mrs. Durbin signed her husband's and her own name to the mineral deed but the manifest weight of the evidence shows that there was no description in the deed, that there was no seal, scroll or word "seal" on the deed after the grantors' signatures or either of them, and that the certificate of acknowledgment which Kanatzar signed as notary public, contained no waiver and release of homestead. When Eliza M. Durbin asked Kanatzar for a copy of the mineral deed, he gave her a similar form to that he had used and marked it "Copy." It had in it the names of the grantors, and the grantee, "H. W. Davis, Tulsa, Oklahoma" but no description of any land. Mrs. Durbin objected that there was no land described and Kanatzar told her she "knew the numbers of the land" and that "he always finished the papers at his office." The record is barren of any evidence to show that Kanatzar had either a written power of attorney or any authority, under seal, to fill in the missing description in the paper signed by Mrs. Durbin and her husband as above described.

It is also shown by the manifest weight of the evidence that the 40 acres above described in section 28, where the Durbins lived, September 16, 1936, was worth not to exceed $960. All the appellants' witnesses knew of sales

of similar land which had been made within a reasonable time before September 16, 1936. They lived in the neighborhood and had known this land for years. Their testimony as to value was based on this knowledge. On the other hand, appellees' witnesses knew of no such sales. Many of them had never lived in the neighborhood and, for these reasons, their testimony as to value was mere personal opinion and was lacking in probative force. An application for fire insurance that George H. Durbin had made was admitted in evidence over objection. It contained figures as to the house, outbuildings and land that would total more than $1000. The proof shows the buildings were at least thirty-eight years old and were not in a very high state of repair. What amount of fire insurance Durbin applied for or carried, if admissible at all, would only be a circumstance and it, coupled with the empty opinions of appellees' witnessses as to value, did not overcome the testimony of appellants' witnesses. Hence, it did not sustain the finding in the decree that the Durbins' home place was worth more than $1000 on September 16, 1936.

After Kanatzar left the Durbin home, he sent the mineral deed to an undivided one-half interest in the oil and gas under the 180 acres with a sight draft to another defendant, W. O. Allen, Tulsa, Oklahoma. Allen sent Kanatzar $225 instead of $135 which would be seventy-five cents per acre for 180 acres. Out of the $225 Kanatzar deposited to the credit of George H. and Eliza M. Durbin, $180 in a bank in St. Elmo. Thus he paid them the $135 he owed for the mineral deed he had taken in the name of Davis and the $45 for the deed and lease he had taken in the name of his cousin, Chance, as straw-man. Kanatzar contradicted himself. For example he said $180 was all he got for the mineral deed taken in the name of Davis but he claimed later the additional $45 out of the total sum of $225 was a "commission." The statement that the $180 was all he got was also contradicted by appellees'

exhibit No. 11 which was a draft for $225 payable to Kanatzar and sent by Allen. Kanatzar did not explain why the paper he marked "Copy" and gave to Mrs. Durbin at her request for a copy of the mineral deed lacked any description of land. The proof shows there was no description in the so-called mineral deed signed by Mrs. Durbin for herself and her husband, there was no seal after either of their signatures, and there was no waiver of homestead in the certificate of acknowledgment which Kanatzar undertook to make as a notary public.

Later, W. O. Allen discovered the omission of the word "seal" and the omission of the release and waiver of the homestead from the certificate of acknowledgment. He sent the deed to another of the defendants, Leroy Rogers, who claims to own a fractional interest in the mineral rights in this 180 acres by *mesne* conveyance from Davis. Rogers was Allen's agent and Allen instructed him to "have the deed reacknowledged, fix it and have it rerecorded." Rogers said he consulted "a lease man" who told him the way to "fix" the deed was to make the changes in it and have the notary initial them. After he had "printed in" the release and waiver of homestead in the certificate of acknowledgment, Rogers went to Kanatzar and the latter did not agree with the advice given by the "lease man" so Kanatzar fixed up a new certificate of acknowledgment on which he wrote the words "To include waiver of homestead, as per deed annexed and seal."

Kanatzar and Rogers testified they drove out to the Durbin home, but Rogers said he drove up and down two or three times in front of the house and that George H. Durbin was on the porch. He could not say whether Durbin was smooth shaven or describe him. Durbin's photograph in evidence showed he wore a large mustache. Rogers said he did not go into the house but remained outside. Kanatzar said he went in, explained the want of a seal after the signatures and the defect in the cer-

tificate of acknowledgment and obtained the consent of the Durbins to make the changes, and that they reacknowledged the deed, there, on October 21, 1936. He pasted on the new certificate of acknowledgment and added the word "Seal" after each of the grantors' signatures to the deed and then went out to the car and handed it to Rogers who rerecorded it.

Mrs. Durbin denied that Kanatzar and Rogers came to her home on October 21, 1936, and testified she did not see Kanatzar from September 16, 1936, until July, 1937. She denied in detail all the things Kanatzar said occurred on October 21, 1936. The mineral deed was recorded in its new and altered form. H. W. Davis lived at Dix, Marion county, Illinois, and had only been in Tulsa once during his lifetime. Like Rogers, he worked for W. O. Allen. He had nothing to do with obtaining or paying for the mineral deed but, at the direction of Allen, conveyed away the interest supposed to be vested in him. The defendant W. O. Allen did not testify, and there was nothing to show that Rogers lacked authority or that Kanatzar lacked authority to make the alterations in the deed they both made.

As in *Tucker* v. *Kanatzar,* 373 Ill. 162, Kanatzar was the real purchaser of the mineral rights involved here although the deed was made to H. W. Davis. Kanatzar was also interested in the outcome of this suit. *Bruner* v. *Battell,* 83 Ill. 317; *Butz* v. *Schwartz,* 135 id. 180.

Appellants had a right to attach to their complaint copies of the mineral deed in its original form as well as its altered form and to show by the record of the deed the changes that were made. By doing so, contrary to appellees' contention, they were not bound and did not admit the validity or efficacy of the deed, either in its original or altered form. *Hogan* v. *Orr,* 341 Ill. 58, 64.

Appellees contend that appellants have limited this appeal, on their part, to the single contention that the mineral

deed was made void by the alteration of a material part of the deed, after delivery, by adding the word "seal" after the signatures of the grantors. The appellants set up as "Errors relied upon for reversal," the following:

"1. The court erred in dismissing the complaint for want of equity. 2. The court erred in sustaining the counterclaim of the defendant H. W. Davis. 3. The court erred in finding and adjudging that the *alterations* in the deed constituted a spoliation rather than a material alteration. 4. The court erred in permitting the altered deed to be offered in evidence for any purpose whatsoever. 5. The court erred in granting specific performance of an agreement which admittedly had been materially altered by the person seeking specific performance. 6. The court erred in refusing to grant to the plaintiffs the relief prayed for in the complaint."

Moreover, appellants rely on the alteration of the certificate of acknowledgment and the fact that Kanatzar was the real party in interest when he got the mineral deed from Durbin and wife, and insist this never was a deed that conveyed any interest, legal or equitable. In *Miller* v. *Cook*, 135 Ill. 190, 201, one of the questions was as to the scope of this court's power to review the facts in an appeal of a chancery suit from the judgment of an appellate court. This court said: "It is the practice of this court, in reviewing causes in chancery, to examine and determine for itself the truth in respect to controverted questions of fact, from the evidence in the record, and there is no legislation which militates against such practice."

In *Anderson* v. *Steger*, 173 Ill. 112, 116, it was said: "There was for a long time great doubt and difficulty with respect to the mode of reviewing the decrees in equity of the Lord Chancellor, but, after a parliamentary struggle of much violence, it was established in the reign of Charles II that appeals would lie from them to the House of Lords. While a writ of error is a process of

common law origin, which brought up for review only errors of law excepted to on the trial, and was the common law method of reviewing judgments at common law, an appeal removed the entire cause to the higher court, to be tried *de novo* on its merits, just as though it had never been tried in the inferior court, and was the method of reviewing chancery causes. By our statute the right of appeal is extended to common law causes and the right to a writ of error to chancery causes, and the technical distinction between the practice in the court of review in cases of appeal and writs of error is not observed, but if the suit follows the course of the common law it is reviewed for error, and if it is in the nature of a chancery cause it is considered upon the merits."

This brings us to a consideration of the present Civil Practice act. (Ill. Rev. Stat. 1939, chap. 110.) Paragraph 198, which is section 74 of the act, in substance makes an appeal a continuation of the original suit and "(1) * * * such appeal shall be deemed to present to the court all issues which heretofore have been presented by appeal and writ of error. (2) All distinctions between the common law record, the bill of exceptions and the certificate of evidence for the purpose of determining what is properly before the reviewing court are hereby abolished." Paragraph 216 (section 92d) among other things attempts to empower this court and the Appellate Courts to "permit such further testimony to be taken in or presented to the reviewing court as it may deem necessary, where evidence has been erroneously excluded or where there has been an omission of proof at the trial of some fact which, under the circumstances of the case, may subsequently be proved without involving any question for a jury and without substantial injustice to either party. (e) Draw inferences of fact; (f) give any judgment and make any order which ought to have been given or made, and make such other and further orders and grant such relief, including a re-

mandment, a partial reversal, the order of a partial new trial, the entry of a remittitur, or the issuance of execution, as the case may require."

Although we have held that the legislature cannot delegate to this court the functions of a *nisi prius* court and compel it to receive additional evidence, these sections clearly indicate that the intention of the General Assembly was to recognize the right of a reviewing court in this State to examine the entire record. It is not material that we have not permitted new evidence to be introduced. The decisions of this court and the language of this section clearly indicate that the intention was that the parties were not to be bound in a chancery case by the findings of the chancellor.

In view of these facts and the broad scope of the "Errors relied upon for reversal," appellants have not limited themselves to one single error. It must be remembered, too, that there is a cross-appeal and that, in answering the argument of cross-appellants, cross-appellees are not limited in their arguments when they are attempting to sustain that part of the decree covered by the cross-appeal. Before leaving this statute, we point out here that the chancellor made findings of fact in the decree before us. In this circumstance, paragraph 188 (section 64 (3),) "No special findings of fact or certificate of evidence shall be necessary in any case in equity to support the decree," has no application to the case *sub judici*.

Appellants contend that material alterations were made and that this made the mineral deed void, while appellees say that, in equity, alterations made after delivery amount to mere spoliation. Appellees rely on our decision in *Wilson* v. *Kruse*, 270 Ill. 298, an attachment suit where the intervening owner of land had possession under a quitclaim deed not under seal. At page 302, it was said: "Under the decisions in this State a deed must be under seal in order to pass legal title to real estate. (*Barger* v. *Hobbs*,

67 Ill. 592; *Barrett* v. *Hinckley,* 124 id. 32; *Irwin* v. *Powell,* 188 id. 107; *Jackson* v. *Security Life Ins. Co.* 233 id. 161.) But an instrument defective as a deed for want of a seal will bind the grantor and his heirs and is good as against a subsequent purchaser who has notice. (*Wadsworth* v. *Wendell,* 5 Johns. Ch. 224; 1 Devlin on Deeds, (2d. ed.) sec. 246.) There can be no question, from this record, that appellant Moore took possession of this property under this deed. The filing of the deed for record was notice of whatever interest appellant had in the land. The possession by appellant through his tenant was also notice of the same fact. (*Mathias* v. *Fulton,* 241 Ill. 598, and cases cited.) A paper purporting to be a deed is not valid in this State for the purpose of conveying title unless it is under seal, yet when a person enters into possession under such paper it is admissible in evidence for the purpose of showing the extent of his possession and what he claims by his possession. (*Barger* v. *Hobbs, supra.*) This instrument, without question, even though not under seal, and assuming it was not properly acknowledged, was evidence of a sale, and showed clearly that the equitable title had been transferred to appellant. On the issues raised by the interplea of appellant it was admissible to show the interest that appellant had in the property." There was no question raised in the case as to the effect of an alteration of any material part or element of a deed.

Appellees also rely on *Barnes* v. *Banks,* 223 Ill. 352, 361, where this court said: "A conveyance of land, to be good at law, must be by deed under seal, but in equity a good title may be conveyed by a. writing not under seal, or without any writing whatever. (*Ashelford* v. *Willis,* 194 Ill. 492.) This case does not fall within that line of verbal gifts or conveyances from parent to child which have been sustained because, upon the face of the verbal conveyance or gift, the donee entered into possession and made lasting and valuable improvements. It does not

appear from the evidence that appellee has done more than paper three rooms in the house. The validity of this instrument and the nature and extent of the estate conveyed by it depend upon whether the father of appellee intended it was a gift to her. A parent has a right to make a gift to his child and when fully executed it is irrevocable." [Citing cases.] It was held that so much of the premises mentioned in the father's letter to his daughter as could be identified, passed to the daughter. It will be noted this was a suit to construe the instrument and no question was raised as to any alteration.

In *Ashelford* v. *Willis*, 194 Ill. 492, the owner of a servient estate brought suit to enjoin the owner of the dominant estate from the use of an easement over the plaintiff's land. The roadway was fenced and under grantee's control and in his possession but the instrument by which he acquired the easement was not under seal. At page 502, it was said: "Practically all the writers on equity jurisprudence are agreed that contracts not under seal, and even contracts not in writing affecting or concerning an interest in land, are recognized in equity, if they have been so far performed that to permit a party to repudiate would of itself be a fraud,—and this court is committed to that doctrine." Here, again, there was no alteration.

The incorporators failed to affix the word "seal" after their signatures to the certificate of incorporation, as required by the statute, in *People* v. *Ford*, 294 Ill. 319. That case did not involve a material alteration and is not in point.

*Barrett* v. *Hinckley*, 124 Ill. 32, contains a discussion of sealed instruments at page 39, but the case holds that a mortgagee before condition broken, in the absence of any additional facts or circumstances besides the existence of the mortgage, itself, could not maintain a suit in ejectment.

To support their contention that the changes in the mineral deed amounted only to mere spoliation, appellees cite 1 R. C. L. pp. 984, 985, where it is said: "Though a

few early cases followed the English doctrine, yet the American rule and with the much better reason appears to be entirely the other way, and it would seem now to be completely settled in this country that a material alteration by a stranger without the privity of any of the parties thereto will not render an instrument void if it can be shown by evidence, what the language was as it originally stood. Such unauthorized act by a stranger is considered strictly speaking, as being a spoliation rather than an alteration of the instrument." This is not in point because Kanatzar was the original purchaser and W. O. Allen, the purchaser from him. He authorized Leroy Rogers, his agent and a party defendant and in interest, whose authority was not questioned by any testimony, to "have the deed reacknowledged, fix it and rerecord it." Rogers and Kanatzar made the alterations. Neither was a stranger. All the appellees claim the deed was legally and validly altered and reacknowledged and claim the benefit of the acts of Rogers and Kanatzar. We have pointed out that Kanatzar cannot be believed and that Mrs. Durbin testified she did not see him from September 16, 1936, until July, 1937, and the chancellor found that there was no second acknowledgment.

Volume 51 A. L. R. 1232, is cited, but it refers only to acts of unauthorized agents. It cites *Patterson* v. *Higgins*, 58 Ill. App. 268, where it was held that the alteration of the note secured by the chattel mortgage there involved without the knowledge of the holder, did not destroy its validity. It cites *Lanum* v. *Patterson*, 143 Ill. App. 244, where the plaintiff's attorney, without authority, made a material alteration in a judgment note without the knowledge of the holder of the note and the decision was that this amounted to mere spoliation and did not render the note void. Also, in *Fry* v. *Jenkins*, 173 Ill. App. 486, one Gilbert was authorized to supplant the old note and mortgage with a new note and mortgage executed by the mort-

gagor, but he had no authority to make changes in the date which he made. In these cases the alterations were made by unauthorized persons not in privity but who were strangers, and their acts constituted mere spoliation and were not binding. In *Clyde S. S. Co.* v. *Whaley,* 231 Fed. 76, an agent of the steamship company stored goods and took a warehouse receipt for the company but in his own name. Later he inserted the company's name and it was held this was a mere spoliation. At page 79 appears the following: "A material change in a written instrument avoids it against one party only when it is made by the other party or with his consent, and a change made by a stranger (that is one who has no legal interest in the instrument) without authority from the party in interest is only a spoliation, not affecting its validity." Kanatzar, Allen and Rogers do not answer the description of "strangers" or parties having no interest.

Appellees also cite in support of the proposition that an agent who makes a change in a material part of a deed, without fraudulent intent, commits a mere spoliation, the case of *Black* v. *Bowman,* 15 Ill. App. 166. It is said there: "The fraudulent alteration of a note in a material part thereof by the payee or holder, not only destroys the instrument but it also extinguishes the debt for which it was given and no recovery can be had upon either. It is necessary that the forfeiture of the debt should be imposed upon the person who fraudulently tampers with the instrument which evidences or secures it, and it is done upon the well-known principle that 'no man shall be permitted to take the chances of gain by the commission of a fraud without running the risk of loss in the case of detection.' On the other hand we may concede that if the alteration, though material, be made without any fraudulent purpose, it is to be regarded as a mere spoliation of the instrument, and the holder may surrender it up and resort to the original indebtedness. (2 Daniell on Negotiable Instruments

p. 382.) The effect of the alteration depends upon its nature, the person by whom and the intention with which it was made.—*Vogle* v. *Ripper*, 34 Ill. 110."

Here the intention was to deprive the Durbins of their homestead and to give the deed the effect of passing legal title by the addition of the word "seal" after the grantors' signatures.

Appellees also contend that if there were material alterations in this deed, they did not destroy the title conveyed by it. In *Dunn* v. *Heasley*, 375 Ill. 43, one of the grantees, the widow of the grantor, remarried. Before this she struck out the provision that her life estate was to terminate if she remarried. Her remarriage destroyed her interest and she certainly could not void the deed as to the other grantees. The point of material alteration was not considered or passed upon. In *Standard Trust and Savings Bank* v. *Fernow*, 317 Ill. 325, five years after the deed was made the grantee John A. W. Fernow had the word "Junior" added to his name in the deed, by the grantors, but this was not done at the direction or by the procurement of his son. We held there was no reacknowledgment or redelivery and that the change did not divest Fernow, Sr., of his title and transfer the title to his son. In discussing *Abbott* v. *Abbott*, 189 Ill. 488, at page 329 of the *Fernow case,* it is said certain language in the *Abbott case* was mere *obiter dictum* because it was not necessary to that decision. But at page 331, this court said: "In *Prettyman* v. *Goodrich,* 23 Ill. 330, it was claimed a description of land had been inserted in a trust deed by the man who wrote it, after it had been executed, without the knowledge of the grantor, and the court was asked to declare the trust deed a nullity. The proof showed the description of the land was inserted in the trust deed with the knowledge and consent of the grantor, and after that was done the grantor, in company with the grantee's attorney, took the trust deed to the recorder's office to be recorded, and paid, or agreed to pay,

the recording fee. The court held there was a second delivery of the deed and sustained it. *Williamson* v. *Williamson,* 306 Ill. 533, is not authority in support of appellee's claim of title. In that case a deed was made by a mother to her son. Sometime after the deed was executed and before it was recorded, the grantor expressed dissatisfaction with the deed because it might leave her without a home. The grantee told her she was right and that he would fix it so as to protect her. Accordingly he had a clause inserted in the deed giving her the possession and use for her life. After the change was made the grantor expressed her satisfaction with it and when she claimed the alteration invalidated the deed, the court denied her claim and sustained the grantee's title subject to the grantor's life estate.

"*Stiles* v. *Probst,* 69 Ill. 382, was the foreclosure of a mortgage. The mortgage was made and delivered in January, 1862. As written it contained the name of the mortgagor's wife as joint mortgagor with her husband and release of her dower in the land but was not executed by her. In July, 1871, she signed and acknowledged the mortgage. The mortgagors contended the mortgage having been executed and delivered by the husband without his wife having signed it became inoperative and that there could be no second delivery. The court said the proof showed it was the intention of the parties from the first that the mortgage should be executed by the wife and the husband retained the possession of it for that purpose; that it was not considered by the parties complete until the wife had executed it. The mortgage was held to be a valid conveyance by the husband and wife.

"Adding the word 'junior' to the name of a grantee, solely for the purpose of identifying him as the real grantee does not affect.the validity of the title, (*Coit* v. *Starkweather,* 8 Conn. 289,) and the erasure of the Christian name by which the grantee is described and the insertion

of his true name will not affect the deed. Such changes are regarded as not material. * * *

"In *Clark* v. *Creswell*, 112 Md. 339, 21 Ann. Cas. 338, a mother bought land, paid the purchase price therefor and had the deed made to her daughter. The deed was delivered to the mother. Before it was recorded the mother had the grantor insert the name of the daughter's husband, also as a grantee. The deed was afterward recorded. The court held the alteration was ineffectual to divest the original grantee of title conveyed to her by the deed or vest any interest in the grantee whose name was inserted. * * * In the cases we have cited, and in the notes to some of them will be found many other cases upon the subject. With few exceptions they are in harmony in holding that when title has vested in the grantee by the delivery of the deed he cannot divest himself of the title and vest it in another grantee, or revest it in the grantor, by an alteration or destruction of the deed. 'When a person has become the legal owner of real estate he cannot transfer it or part with his title except in some of the forms prescribed by law. The grantee may destroy his deed but not his estate. He may deprive himself of his remedy upon the covenants, but not his right to hold the property. This distinction has existed from the earliest times.'—*Clark* v. *Creswell, supra.*" The *Fernow case* held that the grantee could not transfer his title to his son by adding the identifying word "junior," or destroy his own title thereby, and thus deprive his widow and heirs of their right to inherit the property.

Turning now to appellants' contention that here we have material alterations that made this deed void, in *Osby* v. *Reynolds,* 260 Ill. 576, a bill to remove cloud, at page 581, we quoted with approval from Shepard's Touchstone, 54: "Every deed well made must be written, *i.e.*, the agreement must be all written before the sealing and delivery of it, for if a man seal and deliver an empty piece of paper or

parchment, albeit he do therewithal give commandment that an obligation or other matter shall be written in it, and this be done accordingly, yet this is no good deed." In that case it is also said: "This court in *People* v. *Organ,* 27 Ill. 27, stated (p. 29): 'It has been held that a paper signed and sealed in blank, with verbal authority to fill the blank, which is afterwards done, is void as to the party so signing and sealing unless they afterwards deliver or acknowledge or adopt it.' To the same effect are *Chase* v. *Palmer,* 29 Ill. 306, *Whitaker* v. *Miller,* 83 id. 381, *Mickey* v. *Barton,* 194 id. 446, and *Robinson* v. *Yetter,* 238 id. 320. * * * This court has held that where a deed is left in escrow, the unauthorized delivery before the conditions have been complied with conveys no title, and that even an innocent purchaser is no more entitled to protection than in case of perjury.—*Forcum* v. *Brown,* 251 Ill. 301; *Stanley* v. *Valentine,* 79 id. 544." The deed in that case was held void.

*Williams* v. *Williams,* 270 Ill. 552, was a suit for partition. The final holding was that the deed to the building and loan association and the bond for a deed given in turn to Williams by it, did not constitute a mortgage. Williams' assignment of the bond, which was not under seal, made to his wife, was held to transfer the equitable interest Williams held under the bond for deed; that the gift to his wife was completed and valid although there was no consideration and that his children could not partition the land. However, in that case, this court said at page 556: "It is also well settled as the law of this State that the legal title to real estate can only be transferred by an instrument under seal.—*Barger* v. *Hobbs,* 67 Ill. 592; *Barrett* v. *Hinckley,* 124 id. 32; *Irwin* v. *Powell,* 188 id. 107."

*Kelly* v. *Trumble,* 74 Ill. 428, was a suit to remove a cloud on title. At page 429 it was said: "One party to a written instrument has no right, without the consent of

the other party to it, to reform its language, however inaccurately it may express the real contract between them. Unless the parties shall mutually consent to such reformation, it can only be effected through the aid of a court of equity." Also, in *Pasedach* v. *Auw,* 364 Ill. 491, 496, this court said: "The law of this State is that the unauthorized substitution of a grantee in a deed after its final delivery, renders the deed void, (*Abbott* v. *Abbott,* 189 Ill. 488,) and the burden is upon the party who seeks the benefit of the deed as altered to show that the alterations were made prior to the execution and delivery of the instrument." [Citing cases.] The case was a suit to set aside a deed as a cloud because of material alterations.

In *Waggoner* v. *Clark,* 293 Ill. 256, the grantors had conveyed to their son certain lands and later, after delivery, they wrote in a clause which purported to reserve one-half of the mineral rights. Suit was brought to set aside this interlineation in the deed from Charlotte Hamp and Henry Hamp, her husband, to their son, as a cloud on the title. The relief sought was granted and at page 260 this court said: "This court has uniformly required that an alteration or interlineation shall be explained by the party claiming the benefit of the paper, and if it is suspicious in appearance and a satisfactory explanation is not made, the conclusion will be against its validity. [Citing 8 Illinois decisions.] This is the true rule without regard to the age of the instrument or the alteration, where such alteration is shown to exist."

The burden was on appellees, who admitted that the alterations were made, to produce evidence that satisfactorily explained the making. The discredited Kañatzar, who was an interested party, (*People* v. *Bartels,* 138 Ill. 322,) and the testimony of Rogers, is all that is offered. This testimony is far from a satisfactory explanation of the addition of the word "seal" after the grantors signa-

tures and the waiver and release in the original certificate of acknowledgment. We agree with the chancellor as above stated that there never was any reacknowledgment.

The same thing is true of Kanatzar's actions here as was true in *Chance* v. *Kimbrell,* 376 Ill. 615, 622, where this court said: "If the three deeds were blank as to grantee when defendant attached her signature they passed no title and are a nullity. (*Tucker* v. *Kanatzar, supra; Donnelly* v. *Dumanowski,* 329 Ill. 482; *Osby* v. *Reynolds,* 260 id. 576.) We recognize that the chancellor found the deeds were not blank as to grantee and that the rule requires an affirmance of that finding unless such finding is manifestly and palpably wrong. Kanatzar's persistent conduct and attitude throughout the transactions with the defendant in reference to concealing the identity of the real purchaser, and his evidence on the trial given with the evident intent to deceive the court, so characterizes his testimony on other questions of fact in dispute that no weight can be attached to it."

Blackstone (second edition revised, Cooley, volume 1, Book the Second, Of the Right of Things, chapter 1, of Property in General, p. 295,) says: "That there be persons able to contract and be contracted with for the purposes intended by the deed: and also a thing, or subject matter to be contracted for; all which must be expressed by sufficient names. (f) So as in every grant there must be a grantor, a grantee and a thing granted; * * * sixthly, it is requisite that the party, whose deed it is, should seal, and now in most cases, I apprehend should sign it also."

Because title will not pass at law without a seal, in Illinois, and because the homestead cannot be waived and released by deed unless both the body and the certificate of acknowledgment contain such release and waiver, these alterations in the deed in question were material and since their making is admitted, there was a necessity for satisfactory explanation which was not made.

We have already pointed out that there was no description in this deed when Kanatzar received it from the Durbins. The copy he marked as such and gave Mrs. Durbin, and her testimony as to what he said, that he always finished the papers at his office, when she objected that the form he gave her contained no description, and further that she knew the "numbers of the land" clearly show the paper he got contained no description. We have quoted from *Osby* v. *Reynolds, supra,* what was said in Shepard's Touchstone as to deeds and the requirement that they be complete. Particularly it is pointed out there that verbal authority to fill in material parts in the deed is not effectual and the deed so delivered and filled in is void. Kanatzar required written authority to fill in the description.

In *Wilson* v. *South Park Comrs.* 70 Ill. 46, 49, it is said: "Even if appellant had verbally authorized Wheeler to fill the blanks, still Judge Otis must have known the power would be insufficient, and would render the deed void." Also, in *Mickey* v. *Barton,* 194 Ill. 446, 455, this court said: "The deed from Wright to appellee Barton was executed in California and acknowledged without the name of any grantee being in the deed. It was sent to Lawranceville to one Hardy, a half-brother, who says that he had no power of attorney to amend it or insert the name of the grantee, and that he handed the deed to Barton and directed him to write his own name in it as grantee, which he did. This deed was void, and cannot be availed of by Barton as title." [Citing cases.] This was a suit in chancery to remove the deed as a cloud on title.

Since this mineral deed did not have a description in it and Kanatzar had no authority to fill in the description, it never was a deed.

This court is not bound by the findings of the chancellor where this court is of the opinion such findings are not supported by the manifest weight of the evidence. (*Nofftz* v. *Nofftz,* 290 Ill. 36.) We have referred to the

provision in the Civil Practice act that findings of fact are not required to be made in a decree but this in no wise prevents a chancellor from making such findings and cannot render a decree void. Indeed, if a constitutional question were presented in a complaint, such as the allegation that an act of the General Assembly was invalid and unconstitutional for definite and certain reasons and a decree was rendered granting relief, how could this court tell without a finding that it was an unconstitutional act, that the trial court had ruled on the question?

Where findings are made they must be specific. (*Chechik* v. *Koletsky*, 305 Ill. 518; *Franco-American Hygienic Co.* v. *City of Chicago*, 329 id. 585; *Anderson* v. *Anderson*, 339 id. 400.) Here, the decree contains a finding that the mineral deed either contained a description at the time it was delivered or that Kanatzar was authorized to fill the description later but, as we have pointed out, there is no evidence whatever that he had any written authority and the manifest weight of the evidence is that the deed contained no description whatever. For this reason the deed is void.

Appellants contend that the notary here, Kanatzar, was without authority to take either acknowledgment, hence there never was a release and waiver of homestead.

Cross-appellants rely on the well-established rule that the proof furnished by a certificate of acknowledgment signed by a duly appointed and qualified notary public, cannot be overcome by the testimony of the grantors alone. They cite such cases as *Graham* v. *Anderson*, 42 Ill. 514, 519, *Critten* v. *Dickerson*, 202 id. 372, and *Dombro* v. *Hugo*, 370 id. 381, 385. The Durbins reply that this rule does not apply where it is shown that the acknowledging officer had a financial interest in the transaction. In *Hammers* v. *Dole*, 61 Ill. 307, we held a chattel mortgage was void as to the appellee because it was acknowledged before a justice of the peace who was one of the owners of the

chattel mortgage and note. This court said: "This is against the policy of the law. An officer should not be permitted to perform either a ministerial or a judicial act in his own behalf."

In *Ogden Building and Loan Ass'n* v. *Mensch,* 196 Ill. 554, 568, it is said: "The rule of public policy which accords such a high degree of credit to the certificate of acknowledgment of the execution of a deed or mortgage, and which exalts the official certificate of the officer so far above the sworn testimony of the parties who it is made to appear by the certificate have acknowledged the instrument, has its foundation in the other rule, which must control in the decision of this case, that an officer, in order to be deemed qualified to make a certificate of acknowledgment of such dignity, weight and importance to the public and to the parties to the instrument to be acknowledged, shall have had no personal, pecuniary interest to be subserved by the execution and acknowledgment of the instrument. The intention of the law is, the certificate of acknowledgment shall be the official act of a disinterested officer."

In *Wilson* v. *Traer and Co.* 20 Iowa, 231, 233, it is said: "It is always within the power of parties to secure a disinterested officer to take the acknowledgment, and it is certainly no hardship to require them to do so. There is no reason why the fundamental rule which prohibits a person from being a judge in his own case, or an executive officer in his own behalf, should not apply to this class of executive semi-judicial duty. To hold that a party beneficially interested in an instrument is incapable of taking or certifying an acknowledgment of it, cannot work any possible injury to anyone while it will keep closed the door of temptation at least to fraud and oppression."

Kanatzar had a financial interest which continued to exist when he certified to the second acknowledgment and when he placed the word "seal" after the signature of George H. and that of Eliza M. Durbin on the mineral deed

before us, in spite of the fact that it was made to Davis and that Kanatzar has received his sale price of $225 from Allen. Both acknowledgments were void.

The chancellor erred in granting specific performance to the appellees. Here the parties had no intention of entering into any but a written contract. All that appellee W. O. Allen did was to pay money, $225 to Kanatzar who paid part of it, $135, to the Durbins for the supposed deed. There was no possession taken and there was no change of position by any appellee to his hurt. The deed was made subject to the subsisting oil and gas leases and it is admitted that they existed and belonged to the Carter Oil Company, and that there is oil being produced from the land. So far as the surface is concerned, the Durbins were in possession and so far as the use of the land for mining and drilling for oil is concerned, the Carter Oil Company was in possession. The appellees can be compensated in damages and the Statute of Frauds is a good defense, first because there never was any written contract which contained a legal and validly inserted description of the 180 acres, and second, for the reason just stated that the appellees have not made a case that would bring them within an exception of the Statute of Frauds. In *Dreiske* v. *Eisendrath Co.* 214 Ill. 199, 202, specific performance was denied and it was held that if the contract is unreasonable, uncertain or incomplete, relief will not be granted. It was also held that although there were letters from the parties to each other, still, even if they described the land and gave some of the terms, if the intention was that a subsequent written contract was to be entered into, specific performance would be denied in the absence of the execution of such contract. Here, the intention was to make a deed, which, of course, is a species of contract. But as we have already indicated, there never was a valid contract made.

As to the parol agreement, the rule is stated in *Winans* v. *Bloomer,* 321 Ill. 76, 79: "The contract being for the sale of land and not in writing was clearly within the Stat-

ute of Frauds, and for that reason no suit for its specific performance can be maintained unless there has been such performance of it as to take it out of the operation of the statute. Neither payment of the purchase money nor the rendition of service can take a case out of the statute, for the reason that the party can be adequately compensated for the money paid or the services rendered in an action at law." [Citing cases.]

It was error to grant specific performance in this case.

The remaining contention of appellees is that appellants, by the communitization agreement and the division orders they signed, estopped themselves from denying their deed and ratified and confirmed it. However, in *Rhodes* v. *Davis,* 374 Ill. 65, at page 69, we held that a well-spacing agreement and a communitization agreement as to oil produced from the lands of several separate owners, did not constitute such admissions against interest or such a ratification or an estoppel. The division orders and communitization agreement related to oil separated from the land, hence personal property and no longer real property. This contention must be overruled.

For the reasons stated the decree of the circuit court as to the denial of the claimed right to a conveyance to appellees of the homestead of Eliza M. Durbin is affirmed, and as to all other matters and things the decree is reversed and this cause is remanded to the circuit court of Fayette county, with directions to render a decree in conformity to the views herein expressed.

*Reversed and remanded, with directions.*

Mr. Justice Smith took no part in this decision.

Shaw and Wilson, JJ., dissenting.

Mr. Justice Stone, specially concurring: I agree with the conclusion reached in this opinion but not with all that is said therein.